MICHAEL DUFFY, Appellant, v. JAMES L. DAY, Respondent.

**St. Louis Court of Appeals, December 23, 1890.**

1. **Landlord and Tenant:** SURRENDER AND ACCEPTANCE OF PREM- ISES. The tenant of a building in a city wrongfully claimed the right to terminate his tenancy without giving the requisite stat- utory notice, and under such claim vacated the premises; *held* that

the landlord could, without releasing the tenant for the rent accruing while the building remained vacant, take possession of the building for the purpose of preserving it from waste and injury, make slight repairs in order to fit it for another tenant, and endeavor to secure a new tenant; but *held*, further, that the evidence in the case at bar tended to show that the repairs made by the landlord had been made with the intention of so improving the property that it should command a better rental, and warranted a finding that the landlord had accepted a surrender of the premises from the tenant, and had thereby released the latter from the further payment of rent.

:2    Practice, Trial: MODIFICATION OF INSTRUCTIONS DURING CLOSING ARGUMENT: NON-PREJUDICIAL ACTION. A court may correct its instructions to a jury at any stage in the proceedings before verdict; and *held* that the making of such correction during the address to the jury of the party who had the close of the case was not prejudicial, in point of time, to such party.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*D. T. Jewett*, for appellant.

*Collins & Jamison*, for respondent.

BIGGS, J.—This is an action to recover the rent of a dwelling-house in the city of St. Louis from the twenty-first day of November, 1887, to the first day of September, 1888. There was a judgment in the circuit court for the defendant, and the plaintiff has brought the case here for review. He only argues two propositions. He insists, in the *first* place, that there was no substantial evidence to authorize the verdict of the jury or to support the judgment of the court thereon; *secondly*, that the court committed error in adding to the plaintiff's fourth instruction. What we shall have to say concerning the first assignment will dispose of the second.

Concerning the following facts there was substantially no controversy: Prior to the thirteenth day of

October, 1887, the defendant had occupied the premises in controversy as the tenant of the plaintiff, paying therefor a monthly rental of forty dollars. The rent was payable in advance on the twenty-first day of each month. In July, 1887, the defendant served the plaintiff with a written notice that he would vacate the house on the twenty-first day of the following September. The defendant did not leave at the time stated in the notice, but continued in the possession until the thirteenth day of October, at which time he vacated the house, surrendered the keys to the plaintiff, and offered to pay plaintiff's son, who had been acting as agent for his father, the rent from the twenty-first day of September up to that date. The son declined to accept the rent, except on general account, and he stated to the defendant that the plaintiff would require a new notice.

This was the beginning of the differences between the parties, and it is at this point that the conflict in the testimony begins. The defendant testified that, on the morning of the thirteenth of October, he informed the plaintiff that he had moved from the house, and offered to give him the keys ; that the plaintiff said it was "all right;" but asked the defendant to take the keys to his son's office, which the latter did. The plaintiff's son testified that he accepted the keys, but notified the defendant that he would hold him for the rent until another notice was given. On or about the first of December, the plaintiff brought suit against the defendant for the rent of the house from the twenty-first day of September to the twenty-first day of November. He recovered judgment in this action, and the defendant paid it. Nothing more was said about the rent until December, 1888, about the time this suit was brought. The plaintiff admitted that, after the twenty-first day of November, his son, by his authority advertised the property for rent through the newspapers and by placards placed in the windows of the house ; that he made

efforts to rent the house ; that he opened it up several times during each week ; that he made slight repairs in the bath-room and basement ; that he had the plumbing repaired ; that he had the rooms cleaned up ; that he repaired the gate ; and that, notwithstanding his and his son's efforts, they were unable to secure a tenant until about the first day of September, 1888. The plaintiff denied that he took possession of the house for his own benefit, or that he intended by so doing to release the defendant from the payment of rent, and claimed that his only object in looking after the premises was to protect them against waste and to secure another tenant. It was admitted by the defendant that he had no communication either with the plaintiff or the plaintiff's son after he delivered up the keys. However, the testimony introduced by him tended to prove that, after the twenty-first day of November, the plaintiff assumed sole control of the house ; that a month or two afterwards he had the house papered and whitened, and that he made other repairs on the house and premises. He also established the fact from the files of the *Globe-Democrat* that the plaintiff's son, on the twenty-second day of January, 1888, had advertised the house at a rental of fifty dollars ; that, in March, John H. McKinly wanted to rent the property and was asked forty-five dollars ; that the plaintiff asked Dr. Leonard the same price in the early spring ; that Edward Bailey was an applicant, and the plaintiff placed the rent to him at forty-five dollars ; that in July the rent was reduced to forty dollars, and within one month it was rented to Dr. Leonard.

It is conceded by the defendant's counsel that there was but one notice given, and that that was inoperative for the reason the defendant continued in the possession after the date named in the notice. It is also admitted that there was no conversation between the parties after November 21, and that there was no express agreement to release the defendant. Therefore,

if the judgment is to be upheld there must be some-thing in the plaintiff's conduct concerning the house, as shown by the evidence, from which it can be fairly inferred that he assumed control for his own benefit, and with the intention of releasing the defendant from further obligation to pay rent. That no such infer-ence can be fairly deduced from the evidence, is the main proposition discussed in the plaintiff's brief.

In support of this view it may be said that the plaintiff had the right, when the house was left vacant, to take possession of it in order to protect it from waste and from injury by trespassers. It may be conceded also that the making of slight repairs, in order to fit it for another tenant, would afford no evidence that the plaintiff intended to take exclusive control of the premises. Nor can it be said that the mere fact, that the plaintiff endeavored to secure another tenant, is, of itself, any evidence that the plaintiff intended to release the defendant from his obligation to pay rent while the house remained without a tenant. If nothing else appeared the judgment could not stand, for the reason that there would be nothing in these facts in the least inconsistent with the plaintiff's positive statement that he did not intend to release the defendant. But, in our opinion, the evidence goes further. The defend-ant's evidence tended to show that the house was newly papered in December or January. This fact, standing by itself, without explanation, had some tendency to prove that the plaintiff intended to so improve the property as to command a better rental, and not merely to keep the house in proper repair for another tenant. This fact is supplemented by the fur-ther testimony that the plaintiff did advance the rent. We assume that the efforts made by the plaintiff to find another tenant for the property are justified by him on the ground that he was endeavoring to rent the property in order to relieve the defendant from lia-bility; in other words, that, while he intended to

make the defendant pay the loss while the house was vacant, his efforts to re-rent were entirely in the interest of the defendant. This can hardly be reconciled with the fact that the plaintiff advanced the rent. It is admitted that he took possession and that he and his son undertook to find another tenant ; therefore, if he intended to make the defendant pay until another tenant could be secured, good faith required that the property should be offered on the same terms. As it is, it afforded some evidence that the plaintiff had assumed exclusive control of the property, and he no longer looked to the defendant for rent. In addition to this, the defendant's evidence had a tendency to show that no demand was made for rent from November 21,. 1887, until in December, 1888, although under the plaintiff's contract with the defendant the rent was payable monthly in advance, and that the institution of this suit grew out of a demand for the payment of a medical bill, which the plaintiff owed to the defendant. We are inclined to the opinion that the verdict and judgment in this case are based on substantial proof ; consequently, the first assignment will have to be ruled against the plaintiff.

Our conclusion in reference to the first assignment necessarily disposes of the second assignment adversely to the plaintiff. In the second assignment the plaintiff complains of the action of the court in modifying his fourth instruction. This instruction, as asked, told the jury that advertising the house for rent, or making such repairs as might be necessary to fit it for another tenant, or opening it daily so that persons looking for a house might examine it, when taken together, did not amount to such an acceptance of the possession as would relieve the defendant from his legal duty to pay rent. This instruction was given in the form asked, but, during the closing argument by the plaintiff's counsel, the court amended or modified the instruction by adding the following :  "But the jury should

consider all the evidence given in the case in determining whether or not the plaintiff, after November 21, 1887, accepted the surrender and possession of said house for himself, and with the intent to release defendant from liability for rent as tenant of said house." That the amendment or modification of the instruction was right cannot be questioned, if we are right on the first proposition. Whether the plaintiff was prejudiced in the way the amendment was made, is the only remaining question. The action of the court was out of the usual course of procedure, but we know of no rule of practice which would prevent the court from correcting an error in its instructions at any stage of the proceedings before verdict. The plaintiff's counsel was accorded the closing argument on the instruction as amended, and the advantage, if any, was entirely with him.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concurring, it is so ordered.