SAMUEL J. STEIN v. HYMAN-LEWIS COMPANY.

[48 South. 225.]

LANDLORD AND TENANT. *Lease. Surrender. Acceptance.*

A tenant during his term may verbally lease the premises from his landlord for a year beginning at the expiration of the prior lease;* but, having done so, his notification to the landlord before the end of the prior lease that he would surrender the premises at its expiration and the landlord's failure to make objection thereto or to inform the tenant of an intent to hold him for rent under the new lease was, as a matter of law, an abandonment of the verbal lease and precludes liability for rent thereunder, where the tenant actually surrendered the premises at the end of the prior lease and the landlord procured other tenants, although at a less rental, for the new term.

FROM the circuit court of Leflore county.

HON. SYDNEY SMITH, Judge.

---

* This proposition apparently assumed by the court is supported by a previous case, directly deciding the point. *McCroy v. Toney,* 66 Miss. 235, 5 South. 392.

Stein, appellant, was plaintiff in the court below; the Hyman Lewis Co., appellee, was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court.

Plaintiff sued defendant for rent on storehouses for the year beginning April 14, 1906. He based his right of recovery on an alleged verbal contract of lease made during the latter part of the year 1905, before the expiration of a prior lease between the parties of the same premises. Later, about the last of December, 1905, defendant informed plaintiff that he would surrender the buildings at the expiration of the then existing lease, April 14, 1906. Plaintiff made no objection to the proposed surrender and failed to advise defendant that he expected to hold him for the rent for the following year; on the contrary, he made efforts to get other tenants for the buildings, and defendant actually removed from the premises just before the expiration of the prior lease and plaintiff leased the premises to other persons for the year, beginning April 14, 1906, and collected rent from them; the suit was for rent as agreed upon in the verbal lease, less the amount collected from other parties.

*Gwinn & Mounger,* for appellant.

"An acceptance of a surrender will not be presumed from mere lapse of time." 2 Taylor's Landlord & Tenant; § 512. See also *Auer v. Penn* (Pa.) 44 Am. Rep. 116.

After appellee notified appellant of its fixed determination to repudiate its contract, appellant had a perfect right to proceed to get other tenants for the building upon the best terms, and appellee cannot complain of his action either in offering to rent the building to Goodman or in actually renting it during the one year term to various parties, because the benefit of appellant's acts, in doing this, inured to appellee as well as to himself in minimizing the damage accruing from appellee's refusal to carry out its contract.

In *Alsup v. Banks,* 68 Miss. 664, 9 South. 895, as in the case

at bar, at the beginning of the second year of the term the representative of the lessee signified to the lessor his purpose not to carry out the contract, and to abandon and surrender up the premises, which, notwithstanding an expression of unwillingness on the part of the lessor, he soon afterwards did. We quote from the opinion of the court in that case:

"Nor do the facts that appellees took possession of the premises, after their abandonment by appellant, and rented them on the best terms obtainable, release appellant from his liability to pay as the representative of the deceased lessee, for all these acts of appellees were in the interest and for the benefit of the lessee, equally as for the interest and benefit of the lessors. There was no taking by the lessors of possession unqualifiedly and unconditionally, and a dealing with the premises in a manner inconsistent with the continuance of the unexpired lease. True, the lessor might have permitted the premises to remain vacant and untilled and have recovered the entire rental from the lessee or his representative; but he was not compelled to take this course. He wisely and lawfully took the other course whereby the interests of the lessee's estate were largely subserved."

The trial court declined to allow the appellant in his testimony to answer questions upon two propositions which would have added considerable strength to the contention of the appellant that there was no acceptance by him of any surrender of the lease, by explaining that the offers, made by him to lease the buildings to third parties after notice to him by the appellee of its refusal to comply with the contract, were made for the purpose of minimizing the loss to him and to appellee by reason of the buildings lying idle during the whole term of twelve months for whch appellee had rented it, and by explaining further that he had a right to sue for each monthly installment of rent by a separate action, or he had a right to wait until the expiration of the term so as to determine the amount of the difference between the amount of the total rent agreed upon and the total amount

received by him from third parties on account of the rent of the buildings during that time, and then sue for the difference between these two sums.

*Gardner & Whittington,* for appellee.

The cases cited by appellant's attorneys are not analogous to the case before the court, and the learned counsel lose sight of the important and controlling fact that neither at the time of the surrender of the premises nor at the time of the notice of the intention not to renew the lease, nor at any other time prior to the institution of this suit, did the appellant notify the appellee that he would undertake to hold it for loss of any rent during the term beginning April 15th, 1906.

The testimony of the appellant himself shows conclusively that, at the time of the receipt of the notice, on December 29th, 1905, that the appellee would not renew its lease, and at the time of the surrender of the premises thirty days before the original lease expired April 14th, 1906, although the appellee had paid rent until April 14th, 1906, shows that it was clearly the intention of the parties that any verbal lease that may have been made, according to the appellant's contention, was surrendered and accepted without objection by the appellant.

"The rule of law as now settled by the recently adjudicated cases is that any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the demised premises, amount to a surrender by operation of law." 2 Taylor's Landlord and Tenant, § 515, and again:

"If a landlord underlets the premises without notice to the tenant that it is on his account, it dispenses with the surrender on the part of the tenant." Ibid, § 516. Again, "The general rule would seem to be that a parol agreement for surrender fully executed as shown by the overt acts of both parties, will amount to a surrender by operation of law. Thus merely sending a key of the premises to the owner without more, is not such a sur-

render and acceptance as will discharge the tenant from liability, but such sending with an open voluntary acceptance of the key by the landlord may be a surrender." Ibid, § 514.

And in this same section Taylor lays it down that the question whether in a particular case there is a surrender by operation of law is a question of law for the court to decide.

The principle is well stated in 2 McAdam on Landlord and Tenant, § 401, as follows:

"When a tenant abandons premises, and returns the keys to the landlord, the landlord may accept the keys as a surrender of possession, thereby determining the tenant's estate and relet the premises on his own account, or he may accept the keys and resume possession conditionally by notifying the tenant or other person returning the keys, that he will accept the keys, but not the premises, and will relet them on the tenant's account, in which case the tenant may be held for any loss in rental caused by his abandonment and the subsequent reletting."

As we have already stated, there is not a scintilla of evidence showing that Stein accepted the surrender of the houses in question conditionally, and that there is not a scintilla of evidence showing that he ever, at any time, or in any manner, either directly, or indirectly, notified the appellee that he would not accept the premises and that he would relet them on the tenant's account. The evidence shows conclusively that he did accept the premises and that he relet them on his own account.

"Where a tenant during the term ceases to occupy the premises and turns over the key to a new tenant, and where the landlord rents the premises and gives an order for the key, the former tenant is relieved from the payment of subsequent rent.

"In *Murray v. Shave,* the tenant requested to be allowed to give up his lease and the landlord accepted the key and thereupon entered a new agreement with another person. This was held a virtual acceptance by the landlord of the tenant's offered surrender, and discharged her from all liability on the lease.

"A surrender in law is where the parties without any express

surrender, do an act so inconsistent with the subsiting relation of the landlord and tenant, as to imply an intention that the lessor should be in the same situation as if an express surrender had been made. A surrender of the lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them." McAdam on Landlord & Tenant, § 396.

There can be no question but that landlord Stein took possession of these premises, and that he relet the same to other parties without protest or notice to the appellee.

The case of *Bedford v. Terhune* (N. Y.) 86 Am. Dec. 401, is not in point and does not support the contention of the appellant. That was a suit for the occupation where the assignee had actually occupied the premises for the period for which suit was brought.

The facts in the case of *Alsup v. Banks,* 68 Miss. 664, 9 South. 895, are altogether different from the facts in the instant case. In citing this case the learned counsel for the appellant have overlooked the fundamental principle which is the law in this case, and supported by universal authority,—that if the landlord desires to hold the tenant who vacates during his term he must notify the tenant to this effect when he accepts possession.

Argued orally by *E. Mayes,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We think the testimony shows there was a valid verbal lease, made for the year from the 14th of April, 1906, to the 14th of April, 1907. Indeed, counsel for appellee do not seriously combat this contention. But we also think that the testimony shows a surrender of this lease and an acceptance of the surrender by the lessor, Stein. There is nowhere in the record any suggestion that Stein ever gave the appellee any notice

that he would hold it for the rent for the year. In the case of *Auer v. Penn,* 99 Pa. 370, 44 Am. Rep. 114, it appeared that the lessor declined to accept the surrender, and notified the lessee that he would hold him for the rent. In the case of *Alsup v. Banks,* 68 Miss. 664, 9 South. 895, 13 L. R. A. 598, 24 Am. St. Rep. 294, it also appeared that the lessor refused to accept the surrender, and notified the administrator that he would hold the estate of the lessee for the rents. In the case of *Kiernan v. Germain,* 61 Miss. 498, it was counted on as a most important fact that no hint was given the lessee by the lessor, that there was no objection to his leaving the premises, or that any attempt would be made to hold him for the rent afterwards. In 24 Cyc. p. 1374, it is said that an absolute and unqualified taking of possession shows an acceptance, unless the landlord indicates to the tenant his purpose to hold him liable for the rent. Again, in paragraph 4, p. 1375, and in paragraph 6, same page, the failure to notify the tenant that he will rent the premises on the tenant's account is counted on as an important fact. See, also, the notes to these pages of Cyc., and see, especially, *White v. Berry,* 24 R. I. 74, 52 Atl. 682, and *Duffy v. Day,* 42 Mo. App. 638, and the cases cited in note 25, p. 1375; one of them being our own case of *Alsup v. Banks, supra.*

What does or does not constitute a surrender of the lease and an acceptance thereof must be determined from all the facts in each particular case. Without stating in detail all the testimony on that point in this case, we think it is a fair deduction from the testmony that there was such a surrender here, and an acceptance of it, especially in view of the fact that the appellant never notified the lessee at any time, not even after receiving the notification in December, 1905, that they would not renew the lease, that he expected to hold the lessee for the rent. On the whole case, we think the peremptory instruction was properly given.

*Affirmed.*