## Huddleston et al. v. Commonwealth.

(Decided Sept. 28, 1937.)

O. P. ROPER and E. S. PENICK for appellants.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Otis Huddleston and Jesse Henry Blair appeal from a judgment convicting them of manslaughter and fixing the punishment of each at 21 years' imprisonment.

In November, 1936, the deceased, Will Wells, drove the appellants and others from Elkton to his home in Trenton. Soon after their arrival Wells and another

colored man went out to purchase provisions for dinner. In his home Wells had a pistol and a shotgun. Claiming that Wells and his wife were having a difficulty, and he was afraid that Wells would injure his wife, appellant Blair took the pistol and shotgun, and left the shotgun at the home of a neighbor. At that time it was growing late and appellants requested Wells to take them back to their home in Elkton. Before starting Wells missed his guns and accused one or both of appellants of taking them. In his dying declaration Wells stated that there was some discussion about the gun when the woman in the next house called and said, "Here is your gun, they left it over here." He then stepped over to the woman's house and got the gun. When he turned back they got out of the car and met him. Jesse Henry grabbed him, took the gun, and struck him with it. That paralyzed his jaw so he could not speak. They knocked him down, and Jesse Henry stomped him in the face. One of them went in his pockets and got his pocketbook out. Jesse Henry said, "Let's go, we have about got him." On the other hand, both appellants testified in substance that as Wells approached them with his shotgun he began striking at Huddleston and threatening him. Thereupon Huddleston wrested the gun from Wells, who continued to advance and strike him with his fist. Thereupon Huddleston struck Wells with the shotgun, knocking him down.

It is first insisted that Wells' statement was not admissible as a dying declaration, as it was not shown that he was in extremis, and had given up all hope of recovery. Pete Small testified as to the dying statement. When he first went to see Wells he was in mighty bad shape and could not talk. The second time he went to see Wells was on Monday, and Wells died on Friday. His testimony as to what Wells said about not getting well is as follows:

"A. He told me that he didn't believe that he could make it. And I tried to encourage him, and he seemed better then than the first day I went there, and he said, 'No, I can't make it.'"

Upon this showing the court excluded the dying declaration, but later on Small testified as follows:

"Q. When you were there to see Will Wells the last time did he say anything or act as though he was going to die shortly? A. He said that he couldn't get well.

"Q. Did he seem to realize that death was impending or he would soon die? A. The way he talked. He did."

It further appears that Wells' jawbone was broken, his teeth knocked out, and his neck severely injured, and that he died from these wounds. Therefore, the case is one where the wounds were fatal, and the deceased not only said that he could not make it, meaning that he could not recover, but expressly declared that he could not get well. In our opinion, the circumstances were such as to show that the statement was made by the deceased under the sense of impending death, and was therefore admissible as a dying declaration. Meade v. Commonwealth, 225 Ky. 177, 7 S. W. (2d) 1052.

We do not find any merit in the contention that the evidence was insufficient to take the case to the jury, or to sustain the verdict. It is true that both appellants testified to facts presenting a case of self-defense, but, if the dying statement of the deceased be true, and that was a question for the jury, he was attacked by both appellants at a time when they were in no danger, either real or apparent, at his hands.

Judgment affirmed.