## Carpenter v. Commonwealth.

Oct. 17, 1941.

O. J. Cockrell for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On the afternoon of November 5, 1939, the appellant, Herbert Carpenter, shot and killed Victor Ashley.

It occurred in front of a roadhouse in Breathitt county, Kentucky, known as Frozen Inn. He was later indicted by the grand jury of that county, charged with murder and upon his trial he was convicted of voluntary manslaughter with an attached punishment of twelve years confinement in the penitentiary. His motion for a new trial was overruled, and from that order, and the judgment pronounced thereon, he prosecutes this appeal complaining of only one error, which is—that the testimony clearly established his right of self-defense, and that his motion for an acquittal should have been sustained; or, if mistaken in that, then the verdict is flagrantly against the evidence—the disposition of which requires a statement of the substance of the testimony heard at the trial.

In the early forenoon of that day deceased, who resided at Slade, in Powell County, and two others, one Townsend and one King—the latter of whom was the brother-in-law of deceased—loaded themselves in the automobile of the latter and they first went to Campton, the county seat of Wolf County. From thence they went to the Frozen Inn in Breathitt county, but before starting on their apparently aimless trip deceased armed himself with two pistols and Townsend bought himself a new one which he also carried along. A crowd of perhaps twelve or fifteen persons was in the place when the trio arrived, the members of which were dancing and otherwise enjoying themselves with the attractions that the institution provided. The three visitors had consumed, according to the testimony of Townsend, at least one-half pint of liquor before arriving there and they each ordered a bottle of beer immediately upon arriving. They were strangers in that vicinity since its location was a considerable distance from the homes of the unexpected visitors. They went into the building after unloading themselves out of their automobile and almost immediately commenced waving their pistols with the deceased declaring that he was a "bad man from away down yonder." Appellant had gone to the Inn some twenty minutes or more prior to the arrival of the strangers, and about the time they arrived one Caudill came there and went immediately to the eating counter, which was located in what the witnesses referred to as the "kitchen." He ordered a hamburger and ate it before returning to the front room of the Inn. As he entered it deceased approached him and said: "God Damn you, Howard, I am going to kill you, you ran over me at the

other place.'' He then invited Caudill outside of the building and commenced pushing and shoving him toward the front door, during which time he still had out his pistols and prominently displayed them, with an occasional punch at Caudill when driving him out of the room to the outside of the building.

While that was going on Carpenter, who was not acquainted with the deceased or either of his companions, interceded in behalf of Caudill and asked deceased not to kill him, that he (Caudill) was innocent of any wrongdoing, and by that time the parties had gotten to or just outside of the front door when Caudill grabbed one of the pistols of the deceased and he, or he and Carpenter together, succeeded in obtaining one of them, which appellant took charge of momentarily, whilst Caudill was still engaged in trying to extricate himself from harm at the hands of the deceased who still had his other pistol. Townsend started to go out and some of the witnesses say he got out before any shooting occurred, but he says that the shooting occurred just before he got to the front door, and that he does not know who fired the shots or under what circumstances they were fired, although he heard them. He furthermore stated that when he got to the front door where he could see out the deceased had been shot and was lying with his head on the bottom step leading from the ground into the building with his feet extending outward. Townsend then became involved in the melee and shot at appellant a number of times when the latter returned the fire and wounded him; but in the meantime other shots were fired at Townsend from the corner of the building by someone unknown to any witness who testified in the case. Altogether he was wounded in a number of places but he recovered therefrom. Defendant, and, perhaps, another witness or two, corroborating him stated that just before appellant shot the deceased the latter said to him: ''Damn you, I will kill you,'' which, of course, he meant to carry out with the pistol which was still in his possession.

The case as so briefly outlined was not materially contradicted by any testimony heard at the trial. It is true that one or two witnesses stated facts from which it was possibly inferable that the appellant may have fired the first shot, but such facts so testified to are weak, with only a remote bearing upon that issue, and also

they are contradicted by the great overwhelming weight of the testimony. Nor do they link up or fit in with the situation which every witness testifying in the case shows to have been brought about and produced by the abrupt and belligerent manner of the deceased almost immediately after arriving upon the scene. It should also be stated that before deceased contacted Caudill, and while the latter was in the kitchen consuming his hamburger, the three strangers momentarily went out of the building and deceased fired a shot from one of his pistols before returning, which one witness said was fired into the ground.

It will thus be seen that appellant, and the others who composed the inmates of the building when deceased and his two companions arrived were all sober, according to the testimony, with the prevalence of no disturbance, nor any apparently brewing, until the three disturbers appeared announcing their bravery and inaugurating their terrorism. Carpenter had the right to interfere in his efforts to prevent harm to Caudill, who everyone concedes had done nothing to deceased whatever—not even speaking to him—and who was innocent of any infraction of any of the rights of the deceased who appears to have mistaken him for some possible enemy named Howard.

We have time and again held that verdicts in criminal prosecutions may be set aside when they are flagrantly against the evidence, and that if there was no evidence to disprove the interposed defense of the accused it became the duty of the trial court to peremptorily direct his acquittal. In other words, that the practice in such respects applicable to the trial of a civil case also applied to a criminal prosecution, and it is expressly stated in Subsection 5 of Section 271 of our Criminal Code of Practice that a verdict of conviction may be set aside if it is against the evidence. One case sustaining that practice is Howard v. Commonwealth, 243 Ky. 450, 48 S. W. (2d) 1080, and there are others in the notes to the section of the Criminal Code referred to. The case of Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. (2d) 49, 52, 53, is one the facts in which were almost completely analogous to those appearing in the instant prosecution. The crime charged therein was murder and we reversed the conviction because it was flagrantly against the evidence, and following that con-

clusion we said: "And we are very much inclined to the conclusion that an acquittal should have been directed. But, inasmuch as the commonwealth might strengthen its testimony against defendant on another trial, if one should be had, we have concluded not to base the reversal upon ground 1 argued in brief [error in failing to direct an acquittal], but to do so upon ground 2 [insufficient evidence], which is clearly sustained by the record." In that opinion—in substantiating the same rule of practice in the two classes of cases referred to supra—we said: "The law is well settled in criminal jurisprudence that the same practice prevails in criminal prosecutions in dealing with questions of sufficiency of evidence as is administered in civil cases." That statement we substantiated by referring to a number of cases which may be found by consulting that opinion.

Since writing the opinion in the Privitt case there came before us the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, which was a civil case and in which we overruled what had been theretofore followed by this court, and known as the "Scintilla Rule" which, as is well known, required a submission of the factual issues to the jury, howsoever meager the testimony might be on one side as against the other, provided it was sufficient to create a scintilla of evidence. That practice, before the rendition of the Nugent opinion, had been follewed in this jurisdiction, although the court would set aside a verdict rendered in favor of the scintilla on the ground of being flagrantly against the evidence. That rule had long since been abolished in practically all of the courts of the United States, and we concluded in the Nugent opinion that it was illogical, fallacious, and should no longer be followed. We have seen that the practice in dealing with questions of sufficiency of evidence is the same in criminal prosecutions as in civil cases. Therefore, the altered practice as announced in the Nugent opinion would necessarily apply to this criminal prosecution, even if the testimony of the commonwealth was sufficient to create a scintilla of evidence depriving appellant of his right to rely on the excuse of self-defense. However, it is extremely doubtful whether the commonwealth's testimony is sufficient in the respect indicated to create even a scintilla of evidence.

Wherefore, the judgment is reversed with direc-

824

tions to set it aside and upon another trial, if there should be one, to sustain appellant's motion for a directed verdict of acquittal if the evidence should be substantially the same, and for proceedings not inconsistent with this opinion.