## Coots v. Commonwealth.

Nov. 3, 1943.

W. H. Lewis, Astor Hogg, J. B. Carter, and J. H. Asher for appellant.

Hubert Meredith, Attorney General, and Blanche Mackey, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

For the killing of Gordon Gilliam, appellant, Lillie Coots, was convicted of manslaughter and sentenced to

ten years' confinement in the State Reformatory. The conviction occurred on the second trial of the case. On the first trial, the Court directed the jury to return a verdict of acquittal as to Luther Price and Clyde Holcomb, who were jointly indicted with appellant. The crime was committed in the City of Cumberland, in Harlan County, on the eighteenth day of April, 1941. Coots, Price, and Holcomb were city policemen; and, some months prior to his death, Gilliam had been a member of the force, but was discharged after having been arrested by Coots for transporting moonshine whisky. Ill feeling developed between him and Coots as a result of this incident, and the evidence for appellant indicates that Gilliam made various threats against the officers, and asserted on occasions that he intended to kill Coots. The evidence for appellant shows that on the day the killing occurred, he and his companion learned that Gilliam was carrying guns in his car, and making threats against the officers. Coots obtained a search warrant for Gilliam and his car; thereupon, he and his companions went in search of the deceased. The evidence is in sharp conflict as to what occurred thereafter. The Commonwealth's witnesses testified that Coots, Price, and Holcomb stationed their car on a street between the business section of the City and Gilliam's home, which street was usually traveled by Gilliam in going to his home. They stated that the police car was parked in such manner as to form a blockade and prevent Gilliam passing. The officers had been parked five or ten minutes when Gilliam appeared. These witnesses testified that Gilliam stopped his automobile, and alighted therefrom; at the same time Coots jumped from the police car and fired several shots at and into Gilliam, who, when the shooting began, did not have any firearms in his hands. That after he was shot, he procured a rifle from his car and a pistol from his holster, retreated behind his automobile, proceeded around the corner of a building, and came back into the street. That he dropped the rifle and walked across the street, where he fell, his pistol falling to the ground close to his body.

The three police officers testified that after the warrant was obtained, they were making their regular patrol along the streets of Cumberland, when they met Gilliam. That Coots got out of the police car at about the time Gilliam alighted from his automobile; the former demanded that the latter stop and submit to a search

under the warrant. Gilliam fired at Coots with a high-powered rifle, whereupon Coots fired four charges of shot into Gilliam, using a shotgun usually kept in the police car. They testified that the shooting began almost simultaneously, but they were positive Gilliam fired first. The Commonwealth's witnesses stated that Coots said nothing to Gilliam about having a warrant, and did not display the warrant at any time. Upon examination after the shooting, an empty shell was discovered in the barrel of Gilliam's rifle.

We are asked to reverse the judgment, because appellant contends he has established a clear case of self-defense, as a matter of law. The Attorney General seeks the aid of the scintilla rule, which for many years was in force in this jurisdiction, but which, at the almost unanimous bequest of the Bar, was finally, and we had thought notoriously, abolished in respect to civil cases in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, and in respect to criminal cases in Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. (2d) 240. But even if the rule were in force at this time, the evidence for the Commonwealth is not of such flimsy character as to require its invocation. It is apparent that the evidence was sufficient to submit the case to the jury, and to sustain the verdict. Further comment on this phase of the case would be superfluous. We will pass to the complained of errors.

Since a reversal of the judgment must be directed as a result of the admission of incompetent evidence, it is unnecessary for us to discuss the point raised in respect to the qualification of one of the jurors. We will content ourselves by making the casual observation that we agree with counsel for appellant, who raised the question, in so far as he doubts the merit of his contention.

Immediately before his death, Gilliam made the statement that he knew he was going to die, and that he was killed because "he didn't have a chance." The Court permitted the Commonwealth to introduce this evidence as a dying declaration. Dying declarations are admissible as an exception to the hearsay rule of evidence, but they must comply with the general rules of admissibility of evidence. 26 Am. Juris. sec. 393, p. 430; Philpot v. Commonwealth, 195 Ky. 555, 242 S. W. 839,

25 A. L. R. 1367. The same rules which govern the admissibility of evidence, if the deceased were placed on the witness stand to testify, will be applied to his dying declaration, when offered for admission; and the character of evidence which would be excluded, if presented by a witness on the stand, must be excluded if presented as his dying declaration. It is a fundamental principle of the law of evidence that testimony of witnesses upon matters of common knowledge, and within the scope of experience of mankind in general, must be confined to statements of fact within the witness' own knowledge, in contradistinction to their opinions, conclusions, and inferences drawn from facts or speculation. Those who are skilled in a particular field may, upon proper qualification, testify as to their opinions, impressions, or conclusions; and even unskilled witnesses, in some character of cases, are permitted to state their opinions, provided they state the facts from which they draw their inferences. 20 Am. Juris. 765 et seq. Clearly, the dying declaration of Gilliam was a conclusion arrived at by him from facts which he did not state in support thereof. Had he been a witness on the stand, the evidence would have been rejected; and since, as we have seen, dying declarations are subject to the general rules of evidence in respect to their admissibility, the conclusion that "he didn't have a chance" was incompetent. The almost identical statement was considered in Collins v. Commonwealth, 75 Ky. 271, 12 Bush 271; Jones v. Commonwealth, 46 S. W. 217, 20 Ky. Law Rep. 355; Rooney v. Commonwealth, 193 Ky. 723, 237 S. W. 403; and Philpot v. Commonwealth, supra. In those cases the declarations, "he killed me for nothing," "he shot me for nothing," and "I have been shot for nothing," were held to be mere expressions of opinion or conclusions of the witnesses; and, in each case, because the testimony carried the added weight of a solemn declaration of one who conceived himself to be departing from this life, it was held that the admission of the evidence was prejudicial.

For this reason alone, the judgment must be, and hereby is, reversed.