## Hatfield et al. v. Commonwealth.

Feb. 1, 1946.

502

D. H. Hall for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Subsection (1) of section 433.120, KRS (sec. 1159, Carroll's Ky. Stats.) prescribes the punishment of one convicted of the common law crime of robbery at confinement in the penitentiary for not less than two, nor more than ten years. Section 433.140 (sec. 1159a, Carroll's Ky. Stats.) prescribes the punishment for one who commits robbery who "uses or displays any pistol, gun or other firearm or deadly weapon" at confinement in the penitentiary for life or by death. Section 433.150, KRS (sec. 1160, Carroll's Ky. Stats.) prescribes the punishment of one who "with an offensive weapon or instrument, unlawfully and maliciously assaults another, or who in any forcible and violent manner *demands* any money, goods or chattels, bond, bill, deed or will or other evidence of right, or other thing of value * * * with an intent to rob or commit a robbery upon him, shall be punished by confinement in the penitentiary for twenty-one years or for life, or by death." (Our emphasis) Section 433.160 KRS (sec. 1159a, Carroll's Ky. Stats.) prescribes that any aider or abettor of another who commits the crime denounced in sections 433.120, or 433.130, KRS, "shall be confined in the penitentiary for not less than *two* nor more than *ten* years." (Our emphasis).

The grand jury of Knott County returned an indictment against appellants, James Hatfield, Forrest Sturgill, Mabrie Sturgill, Sid Blizzard and Haskel Hopper, of the offense denounced in section 433.150, supra, i. e., the commission of robbery by assaulting another with an offensive weapon, etc. The defendants entered pleas

of not guilty, and upon trial they were convicted by the verdict of the jury with affixed punishment at *ten* years' confinement of each in the State Reformatory. Their motions for a new trial were overruled, followed by judgments against each in conformity with the verdict, from which they prosecute this appeal. The indictment accuses each defendant as principal, and in another count therein the non-participants are each charged with aiding and abetting the one or ones who actually perpetrated the alleged crime.

The instructions of the court are not made a part of the record by any bill of exceptions, nor are they otherwise contained in the record; the reason for which —as stated in brief of appellants' counsel only—is, that when the bill of exceptions was prepared the instructions had disappeared and could not be found by the Clerk; but there was no motion made to supply them in the manner prescribed by law. However, the bill of evidence does contain, in narrative form, the evidence heard at the trial.

John Conley, the victim of the alleged offense, testified that he was returning from a country store in Knott County from which he had purchased some meat, and that at a point some 400 feet or more from his residence the defendants, traveling in an automobile, approached him from the rear and offered to carry him to his home, but he told them that the distance was so short that he could walk. But finally he agreed to and did get into defendants' car; that they passed his residence— although he informed them that it was the place he desired to make his exit—and stopped the automobile opposite a barn on the side of the highway about the same distance beyond his residence; that at that point all of the defendants, except one, got out of the vehicle, as did he, when, as he said: "They began striking and beating me and trying to get their hands in my pockets. No one ever ask me for any money or ever mentioned money, or asked me for anything." He also testified that only two of them tried to do anything to him, and they were Sid Blizzard and James Hatfield; that the defendant, Jack Hatfield, begged them to let him alone and not bother him, and that Forrest Sturgill remained in the car all the time; that the two who he claimed did bother or assault him knocked him down on the ground and ran their hands in his pockets; that K. E. Nichols

about that time drove up in an automobile from the opposite direction, with Kathleen Thacker as a passenger, when his attackers walked away, and he got up and went back to his home. Nichols and Miss Thacker testified that they saw some of the defendants and the alleged victim in a scuffle as though they were fighting, but neither they, nor the victim, testified that any weapon or other offensive instrument was attempted to be used, or even displayed, by any of the defendants, nor did they see anyone strike Conley. That testimony is all that was introduced by the Commonwealth.

On the other hand, defendant, Sid Blizzard, who was the first witness introduced by the defense, testified that he and his companions on Christmas Eve, 1944—the date of the alleged offense—were in search of whiskey when they overtook their alleged victim (the witness, Conley), who flagged them to stop, which they did. He then asked them for a ride which they granted, and he got into their automobile. They then informed him of their vain search for liquor, and he stated that he had some in a barn just below his residence, where he had deposited it rather than keeping it in his residence, and that he would sell them a quart; that when they stopped opposite the barn Conley went into the barn and returned with a quart of whiskey which defendants then and there purchased from him; that after some of the defendants and Conley had taken two drinks therefrom the latter (Conley) took charge of the bottle with the remaining contents and started toward his home, when defendants objected, since they insisted that the remaining portion of the liquor belonged to them; that he did not heed their protests but continued to walk away with the remnants of the liquor, when two of them went to him and endeavored to take it away from him, which they did, but which he vigorously resented, and in their efforts to rescue their liquor he was pushed down by one of the two defendants who endeavored to obtain the liquor from him. That testimony was completely corroborated by the other defendants and by a distinterested witness. That account of the struggle or assault was all that the witnesses for the prosecution, Nichols and Thacker, saw or testified to. Notwithstanding the instructions are not contained in the record, it does contain the evidence so as to enable us to ascertain whether or not the conviction was or is erroneous.

Assuming (but without deciding) that the indictment is sufficient to properly accuse defendants of the offense denounced in section 433.150, KRS, then it is crystal clear that the evidence fails to establish an essential element, which might be deemed the gravamen of the offense denounced therein, and which is, that the assault and battery is not shown to have been committed "with an offensive weapon or instrument." It might also be noted that the evidence was entirely lacking in proof of an intention to rob, since the victim stated that none of the appellants asked for or "demanded" any article of value, nor one of no value, from the person of their alleged victim, nor did they obtain any such article from him, except the remnant of the liquor which they overwhelmingly proved was theirs. Such facts are most persuasive that the testimony given by the five defendants as to what occurred contains the truth as to what happened.

Moreover, the same section prescribes for a minimum punishment of 21 years' confinement in the State Reformatory, or for a term of his life, or by death, but the verdict returned is for such confinement for only *ten* years. It might be insisted that defendants are in no attitude to complain of their being given a lesser punishment than that prescribed by the statute under which they were indicted, but with which we do not agree, since the jury might not have returned a verdict of guilty where the minimum punishment was as much as 21 years' confinement in the penitentiary, but were willing to convict with a punishment at ten years.

Assuming (but without deciding) that the offense dealt with by the sections of the statute supra—as well as the common law offense of assault and battery—are degrees of the higher offense, then the same criticism which we have made as to the higher one denounced in section 433.150, KRS, would apply to each of them, except as to the offense of assault and battery. However, if an instruction was given on the latter offense, as a degree of the one charged in the indictment, then it would not be a felony punishable by *any* confinement in the State Penitentiary, or otherwise than the assessment of a fine, or a jail sentence, or both in the discretion of the jury.

Lastly, we are convinced that the verdict of guilty of any of the offenses to which we have referred is over-

whelmingly against the evidence and so flagrantly so as to bring the case within the rule announced in the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, which we have held (since its rendition) in the cases of Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d 240; Rogers v. Commonwealth, 289 Ky. 83, 158 S. W. 2d 44; Reed v. Commonwealth, 289 Ky. 173, 158 S. W. 2d 380, and perhaps others, to apply and govern the trial of criminal prosecutions the same as in civil cases.

Conley denied the testimony adduced by the defendants as to his procuring and selling appellants the quart of liquor, but he was silent on other facts testified to by defendants, so that at best his testimony as to the way and manner he was assaulted is flatly contradicted by that given by each of the five appellants and which, as we have hereinbefore said, is fortified by the fact that no demand was made for the delivery of any property or thing of value belonging to the victim to appellants, and that they took from him nothing whatever, except the remnant of their own purchased quart of liquor, which he possibly was carrying at the time in an overcoat pocket, since the transaction took place in mid-winter, and if true, it was necessary for the procurer of the liquor to run his hand in the pocket of the prosecuting witness. We therefore conclude that in any view of the case appellants' motion for a peremptory instruction should have prevailed.

Wherefore, the judgment is reversed with directions to sustain the motion for a new trial, and upon another trial, if there should be one, and the evidence is the same, to sustain the motion, and for other proceedings not inconsistent with this opinion.