## Allen v. Commonwealth.

January 31, 1947.

Shumate and Shumate and Leebern Allen for appellant.

Eldon S. Dummit, Attorney General, and Emmet V. Mittlebeeler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is by Daniel Allen from a conviction of voluntary manslaughter and judgment of five years' imprisonment for the killing of Edgar Begley. The conviction of his brother, Ramey Allen, for the murder of Begley has been affirmed. Allen v. Commonwealth, 302 Ky. 546, 195 S. W. 2d 96. The general facts are related in that opinion. The testimony on this trial is meager, especially as to what occurred immediately before the killing.

When George Begley, the father of the man killed, and Ed Todd, the driver of the automobile, described in the other opinion, quickly left the car, the deceased, Edgar Begley, was on the back seat between Ramey and Daniel Allen. When they had gone perhaps 100 yards they heard three shots fired in quick succession. George Begley testified that he had not heard any threat and had not seen Daniel doing anything wrong during the ride or when he left the car. Todd testified that Edgar

and Ramey had "ahold of each other, wrestling;" that Daniel was not drunk and had "ahold of nobody;" that he was saying and doing nothing when he and George left the car. He testified that after hearing the shots Ramey "came down" (he does not say where) and told them Edgar was shot; that he went back to the car and found Daniel on the seat with the wounded man. Ramey got back in the car. The defendant had not been with the other men when they were gambling, but was invited by Edgar Begley to ride down the road with them a short distance, saying that they would be back in time for the train which Daniel expected to meet. Edgar's wife testified that the next day, Sunday, he said, "I can't get well; I can't live;" and further, "He said Daniel and Ramey Allen shot him and took his money." His brother, Earl, who had arrived at 4 o'clock the next morning, testified that he asked Edgar "who done this?" and he answered: "The Allen boys, Daniel and Ramey shot me and took my money." His widow also related this second statement. This is the entire testimony of the Commonwealth connecting the defendant, Daniel Allen, with the killing.

The defendant testified that as they were going down the road: "Ramey and Edgar got into it. I don't know what they got into it over. I tried to get out and couldn't." Todd stopped the car and the three of them jumped out; Ramey and Begley were quarreling, but he did not know what about. They "had ahold of one another." He had told them to quit "a time or two."

He saw Edgar Begley with a razor but did not see any pistol. He followed Todd and George Begley down the road, saying "they was going fast and I was right behind them." Ramey came down the road after the shots were fired "hollering for George Begley." Ramey went back to the car with the witness and Todd. He contradicted Todd's testimony that he was in the car when Todd returned. On recall, Todd testified the defendant did not go down the road with or close to himself and George. Both the defendant and his brother accompanied the wounded man in Todd's car when they left the scene, but got out at their respective homes along the way to the deceased's home.

Ramey Allen testified that he shot Edgar because he

was attacking him with a razor; that Daniel had done nothing at all and was not involved in the killing in any way.

The defendant established by a number of witnesses that he had a good moral reputation.

The question is whether this evidence is sufficient to support the verdict or, under our present practice, to have authorized the court to submit the case to the jury. It is obvious that mere presence when a crime is committed is not evidence that one committed it or aided in the commission. English v. Commonwealth, 240 Ky. 446, 42 S. W. 2d 706; Brock v. Commonwealth, 293 Ky. 311, 168 S. W. 2d 993.

The sole evidence tending to prove the defendant guilty is the dying declaration. It is only that the deceased said, ''The Allen boys, Daniel and Ramey'' had shot him. The question is whether that is enough. Without that dying declaration there is no sort of evidence that the defendant had any part in the homicide.

Some courts regard a dying declaration as of less value and weight than ordinary testimony, and under the practice in some jurisdictions it is proper for the court to instruct or advise the jury that it should be received with caution and considered with the greatest deliberation in the light of all the evidence in the case. 40 C. J. S., Homicide, sec. 304; 26 Am. Jur., Homicide, Sec. 426; Annotations, 52 L. R. A., N. S., 155, Ann. Cas. 1914C, 222. But we accept the declaration as the testimony of the person killed and regard it as of the same character as if given on the witness stand. It is no more sacred and may be contradicted or discredited in the same way as testimony of a living witness. Roberson's Ky. Crim. Law, Secs. 456, 470; Commonwealth v. Lawson, 119 Ky. 765, 80 S. W. 206; Tolliver v. Commonwealth, 161 Ky. 81, 170 S. W. 515; Coots v. Commonwealth, 295 Ky. 637, 175 S. W. 2d 139. The weight to be given the testimony is for the jury. It is free and unlimited in its evaluation. As is well known, in Kentucky the trial judge is not permitted to comment upon the evidence or admonish the jury as to the consideration they should give to any evidence. Roberson, Sec. 488; Coyle v. Commonwealth, 122 Ky. 781, 93 S. W. 584, 29 Ky. Law Rep. 340; Postell

v. Commonwealth, 174 Ky. 272, 192 S. W. 39; Huddleston v. Commonwealth, 269 Ky. 811, 108 S. W. 2d 1010.

When the court comes to appraise the probative worth of a dying declaration, we realize that, as an exception to the hearsay rule, the statement of a victim who expects to die is received on the ground of necessity in order to protect the innocent and prevent murder going unpunished (though it is received also when the exigencies do not make it necessary, Fuqua v. Commonwealth, 73 S. W. 782, 24 Ky. Law Rep. 2204), and because temptation to falsehood is presumably absent. Yet we know that a dying man sometimes retains his passions and prejudices, his motives of malice and revenge, which may pervert his perception or affect the trustworthiness of his accusations. And the same influence, as well as sympathy and fallibility of memory and disposition to tell truly what he remembers, may also affect the witness in relating the statement. Above all, especially in a case where the statement is so general, the absence of opportunity for cross-examination by the defendant must be taken into consideration in testing the probative value of a dying declaration as a matter of law. Lucas v. Commonwealth, 153 Ky. 424, 155 S. W. 721; Wharton's Criminal Evidence, Sec. 546; Cf. Green v. Commonwealth, 18 S. W. 515, 13 Ky. Law Rep. 897. So this court has often commented upon the caution with which a dying declaration should be received and regarded (Postell v. Commonwealth, supra), though still holding, paradoxically, the jury should not be thus counseled.

The declaration in this case is only as to the identification of the person or persons who shot the deceased. In our evaluation we remember that in other cases a similar statement proved not to be primary knowledge of the declarant but merely his opinion or belief because it was developed he was not in position to know. Roberson, Sec. 441; Green v. Commonwealth, supra; Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. 2d 29.

In People v. Ludkowitz, 266 N. Y. 233, 194 N. E. 688, where three eyewitnesses testified that the defendant was not at the scene of the shooting, and there was no testimony indicating that the deceased had seen his assailant, and no eyewitness directly or indirectly connected the defendant with the crime, and no motive was shown, the

uncorroborated dying declaration which charged the defendant with the killing was held insufficient to support the conviction of murder.

In O'Neal v. State, Miss., 48 So. 225, a dying declaration which constituted the sole evidence of guilt was regarded as inherently false and a judgment of conviction was set aside as not being sustained.

The deceased's general and broad declaration that "The Allen boys, Ramey and Daniel" had shot him is inherently weak. It is meager and incomplete. Cf. Daughters v. Commonwealth, 255 Ky. 172, 73 S. W. 2d 10, 94 A. L. R. 673. It may have been connected, or at least materially qualified or modified had there been a cross-examination. It is contradicted by all the positive testimony. The circumstances related by the father of the deceased and by Todd, who seems to have been disinterested and fair, confirm completely the admission of Ramey Allen that he alone killed Begley. The deceased was drunk when he was shot. Whether his mind and memory were therefore clouded, or whether some evil motive actuated him when he made the statements, we need not judge. It was untrue for it is certain that both men did not shoot him.

There must be more than a scintilla or sparkle of evidence when all is considered to sustain any verdict, especially in a prosecution for crime where the rule of reasonable doubt continues throughout the proceeding to the end. Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d 240. It is elemental and fundamental that no man may be convicted of crime without evidence having probative value, as determined by experience and defined by the courts—evidence of substance and of a quality to convince. Anything less is repugnant to the conscience of mankind. While reluctant always to set aside a verdict because of insufficient evidence, we cannot permit this man to be sent to the penitentiary upon this record.

Wherefore the judgment is reversed.