### Burgin v. Commonwealth.

October 25, 1949.

Rehearing denied January 17, 1950.

Joe E. Caylor for appellant.

A. E. Funk, Attorney General, and Squire N. Williams, Jr., Assistant Attorney General, for appellee.

CHIEF JUSTICE SIMS—Reversing.

In seeking to reverse a judgment sentencing him to confinement in the penitentiary for two years for the crime of robbery, V. K. (Bud) Burgin insists: 1. His motion for a directed verdict should have been sustained; 2. the court, in contravention of sec. 601 of the Civil Code of Practice, erroneously allowed a witness to testify who had remained in the court room all during the trial; 3. appellant was entitled to a new trial on the ground of newly discovered evidence. We have reached the conclusion that there is merit in the first ground and as the other two grounds will not likely arise in the event of another trial, it will not be necessary to discuss them.

About 2 o'clock in the afternoon of October 6, 1947, Bud Burgin and Rufus Hyden met by chance on the street in Somerset. They were acquainted and each testified that the other suggested they go to the south end of town and get some whiskey. Unknown to Burgin, Hyden had just cashed a check for $50 and in addition thereto he had some $10 or $15 in bills on his person. They hailed a taxi and went to a point near the store of Jim Ritter and each testified that the other left the cab and bought a half-pint of whiskey, which was paid for by Hyden as well as some cigarettes the latter purchased.

The cab then took them to the bus station in Somerset where both alighted and went up an alley some little distance behind the station to take a drink. The cab driver, Vertress Coomer, testified that on the way to the bus station from the south end of Somerset, Hyden had two one-half pint bottles of whiskey and the passengers drank one of them and threw the empty bottle out the

cab window. His two passengers left the cab at the station and Hyden "acted like he was pretty drunk."

Hyden's testimony is that he paid the cab fare and he and Burgin went back of the station 70 or 80 yards. He took a small drink and turned the bottle over to Burgin who "killed it" and threw the bottle down and then hit him across the face twice with something. He "waked up a couple of days later in the hospital with his head and nose swollen and four teeth knocked loose." Hyden said he was robbed of about $55 but he could not say who robbed him while he lay unconscious. Furthermore, he stated he was sober when knocked out.

Hyden was found in an unconscious condition behind the bus station between 2 and 3 o'clock in the afternoon with one leg of his trousers on fire and two $1 bills partly under his body. Harvey Acton, an employee of the bus station, Donald Orwin, a radio station employee, and John Prather, acting Police Judge of Somerset, all went to where Hyden was lying unconscious and none of them smelled whiskey on him although they came in close contact with his body. Acton's testimony is that he saw Hyden and Burgin go behind the station and they did not appear to be drunk. Orwin and Acton noticed a bruise on his head and mouth; the former said Hyden was bleeding from the mouth, while the latter saw no blood. Judge Prather noticed no wound on Hyden's face or head but saw a little blood on his lips. Hyden's leg was so badly burned it had to be amputated.

Orwin testified that two Stevens children, brothers about 8 and 12 years of age, were spending money so freely that afternoon it attracted his attention. He "sorta threatened the boys" and Hyden's pocketbook and some $12 were produced by their mother from under a mattress in their home. Chester Stevens, the 12 year old boy, testified that he and his 8 year old brother, Freddy, found Hyden's pocketbook laying beside him with money scattered about and he (Chester) picked up "a great big handful of money" and gave it and the pocketbook to his mother. Freddy did not testify, but Chester, although 12 years of age, stated he could not count money and did not know how much there was but admitted spending some of it, "about ten cents."

The Chief of Police of Somerset, H. R. Norfleet, testified that on the day of this occurrence Chester admitted to him he and his brother had knocked Hyden in the head. Chester denied making this statement to the Chief. Noble Massengale, a patrolman, testified that when the officers first went to the Stevens home the occupants reported to them the money was not there. They went back later and Mrs. Stevens got the money and pocketbook from under a mattress and gave it to the officers. The officers recovered the pocketbook, together with about $12, from the Stevens home some two hours after Hyden was found unconscious in the alley behind the bus station.

Judge Prather stated Burgin was not with Hyden when the latter was found unconscious, but a few minutes thereafter he had a patrolman pick up Burgin on the street. Burgin was sober and had no money on him. Chief Norfleet testified Burgin was brought to the police station some ten minutes after Hyden was found. He kept Burgin there all afternoon investigating the crime. Burgin was sober and a search of his pockets revealed he had no money—"not over thirty cents."

Burgin's testimony was to the effect that Hyden was drinking when they got together and when they left the cab at the bus station Hyden was staggering drunk—"He was as drunk as I ever seen anyone;" that he had to hold Hyden up and took him behind the bus station so he would not get arrested. Hyden "passed out" and he left him and went out on the square and was later picked up by the police on the street after Hyden was found. According to Burgin, he only took a couple of small drinks and Hyden drank all the rest of about a fourth of a pint he had in a bottle when they first got together as well as the half-pint Hyden bought in the south end of town. Burgin denied striking Hyden or of taking any money from him.

From this full narration of the proof it is patent the evidence is not sufficient to sustain a conviction. It is evident that Hyden was dead drunk or else received extremely hard blows about his head; otherwise, the fire which burned his leg to the extent that it had to be amputated would have aroused him. No nurse, hospital attendant or doctor testified as to the extent of the wounds on Hyden's face or head. The testimony of Acton,

Orwin and Prather indicate the wounds on Hyden's head and face were superficial. Hyden's testimony is that Burgin hit him in the face twice and knocked him out but he did not know who robbed him. The testimony of the Police Judge and the Chief of Police show Burgin was picked up on the street shortly after Hyden was found and that Burgin was sober and had no money on him in excess of thirty cents.

Chester Stevens admits he got Hyden's pocketbook and "a handful of money." He at first denied this money was in the Stevens home, but when the police went back there a second time, Mrs. Stevens produced $12 and Hyden's pocketbook from under a mattress. The testimony of the Chief of Police is that Chester admitted to him that day he knocked Hyden in the head. It is common knowledge that police officers are not inclined to testify in favor of one accused of crime unless they are certain their testimony is accurate.

The evidence against Burgin is the testimony of Hyden that Burgin struck him twice in the face and knocked him out. The physical facts do not support that statement but tend to show Hyden was so drunk he lost consciousness. The circumstance that Burgin was the last man seen with Hyden before he was found unconscious, with this money and pocketbook missing, will not authorize Burgin's conviction in the face of the fact that no money was found on Burgin when he was arrested a few minutes later. And in view of the further fact that Chester Stevens admitted picking up Hyden's pocketbook and money beside his prostrate body and hid it under a mattress in the Stevens home.

Appellant relies upon Bolin v. Commonwealth, 303 Ky. 75, 196 S. W. 2d 870, as supporting his contention that the evidence will not sustain a conviction, while the Commonwealth relies upon Duncan v. Commonwealth, 294 Ky. 783, 172 S. W. 2d 665, as supporting its contention that the evidence does support the conviction. The Bolin opinion holds that a conviction may be had upon circumstantial evidence, but such evidence must be stronger than a mere suspicion; and if the evidence for the Commonwealth is as consistent with innocence as it is with guilt, it is insufficient to sustain a conviction and a verdict should be directed in favor of the accused. It is patent that the evidence before us is

as consistent with Burgin's innocence as it is with his guilt; therefore, the trial court should have directed a verdict in his behalf. Pardue v. Commonwealth, 227 Ky. 205, 12 S. W. 2d 288; Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. 2d 34; Fyffe v. Commonwealth, 301 Ky. 165, 190 S. W. 2d 674.

Duncan v. Commonwealth, 294 Ky. 783, 172 S. W. 2d 665, is to the effect that if there is any evidence of probative character, direct or circumstantial, which tends to establish guilt, it is the duty of the court to submit the case to the jury. The Duncan opinion overlooked Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d 240, where we expressly applied to criminal cases the rule abolishing the scintilla doctrine in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877. The Nugent opinion has been generally followed; Blackburn v. Commonwealth, 298 Ky. 510, 183 S. W. 2d 480; Hatfield v. Commonwealth, 301 Ky. 501, 192 S. W. 2d 385; Allen v. Commonwealth, 303 Ky. 783, 199 S. W. 2d 453, and other cases which could be cited.

It was pointed out in the Allen opinion that one charged with crime must be proven guilty beyond a reasonable doubt, hence it necessarily follows that it took more than a scintilla of evidence to sustain a conviction even before the rule in the Nugent case was applied to criminal cases. But there can be no doubt that since the Carpenter opinion expressly applied to criminal cases the rule announced in the Nugent case, that if the evidence is not sufficient to sustain a verdict of guilty, it is the duty of the trial judge to direct a verdict in favor of the accused. And when we reverse a judgment of conviction because the verdict is flagrantly against the evidence, it is our duty to direct the trial court to give a peremptory instruction in favor of the accused should the evidence be the same on another trial.

Since the Carpenter case was decided, there have crept into a few of our opinions, such as Duncan v. Commonwealth, 274 Ky. 783, 172 S. W. 2d 665 and Hampton v. Commonwealth, 308 Ky. 270, 214 S. W. 2d 272, expressions to the effect that if there is any evidence, slight or circumstantial, which tends to establish guilt, it is the duty of the court to submit the case to the jury. This does not state the correct rule as written in Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d

240; Blackburn v. Commonwealth, 298 Ky. 510, 183 S. W. 2d 480; Allen v. Commonwealth, 303 Ky. 783, 199 S. W. 2d 453. Insofar as the Duncan and Hampton opinions are in conflict with the authorities just cited, those two opinions are overruled.

The judgment is reversed with directions that if the evidence is substantially the same upon another trial, the court at the conclusion of all the evidence will direct a verdict in favor of the accused.