SMITH et al.

v.

COMMONWEALTH.

Court of Appeals of Kentucky.

Jan. 15, 1954.

Jasper H. Preece, Inez, for appellants.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., W. D. Sparks, Commonwealth's Atty., Louisa, for appellee.

WADDILL, Commissioner.

Appellants were convicted of the crime of grand larceny and sentenced to one year in prison. They seek a reversal of the judgment, urging that (1) the court erred in failing to sustain the demurrer to the indictment; and (2) the verdict was flagrantly against the evidence.

In support of their first contention appellants claim that the indictment was fatally defective in failing to state the property was taken "against the will, or without the consent of the owner." There is no merit in this contention for the reason that the indictment alleges that appellants " * * * did with force and arms, unlawfully and feloniously, take, steal and carry away copper wire * * *." The charge that appellants forcibly took the property in question from the owner sufficiently describes the trespass. Therefore, the indictment clearly states that element of the crime of larceny.

Appellants next contend that the verdict was flagrantly against the evidence. A disposition of this contention requires a statement of the substance of the testimony heard at the trial.

The evidence upon which the appellants were convicted was largely circumstantial. No witness testified to having seen the appellants steal or carry away any wire from the Cinderella Mine. Nor does any witness testify that appellants were seen with any wire in their possession. However, the Commonwealth does rely upon circumstantial evidence and the testimony of Colbert Crum concerning a conversation he had with appellant Bryant in the presence·

of the other appellants, claimed by the Commonwealth to be incriminating, to sustain the verdict.

During the years of 1951–52 the Cinderella Coal Company operated a coal mine in a remote section of Martin County near the West Virginia state border. In January, 1952, a large quantity of copper wire was stolen from its mine. Upon investigation, certain officers of the coal company found the wire secreted in a field near the home of Ance Marcum. The Marcum residence was the only dwelling located in the neighborhood of the mine.

The only testimony which in any way might circumstantially connect appellants with the theft was given by the witnesses, Ance Marcum and his wife, Beulah, John Chaffins and Tom Johnson. Marcum testified that he was informed of the theft by Tom Johnson, a deputy sheriff, and was shown the trail and marks on the ground along which the wire had been dragged across his·yard and over a hill. Marcum stated he was present· when the wire was found about a quarter of a mile below his residence. Marcum further stated that on the following day he met the appellants on the road leading to the mine near the place where the wire was hidden, and that later he discovered that the wire had been moved to a place behind his garden and cut into six foot lengths.

The testimony of officers, Chaffins and Johnson, was to the effect that after they had discovered the place where the wire was concealed, they stationed themselves in a car nearby, and at about 11:30 o'clock that night, they saw a truck drive by which had the name "J. H. Vinson" painted on its door, which they pursued into West Virginia but were unable to stop because of its speed. These officers testified that they were unable to identify anyone in the truck, but did state that they saw no wire in the truck. This truck was later identified by the officers as belonging to the grandfather of the appellant, Vinson.

Mrs. Beulah Marcum testified she saw the appellants on the road near her home the day following the theft of the wire,

while she and her husband were enroute to the post office.

We now reach the testimony given by Colbert Crum relative to a conversation which he claimed he had with appellant Bryant. Crum testified he operated a small coal mine which was located in the vicinity of the Cinderella Mine. He stated that in hauling coal from his mine he traveled the road which passed near the place where the wire was hidden. On the day following the discovery of the place where the wire was cached, Crum stated that when he reached a place below Ance Marcum's property, he saw the appellants in the road; he stopped his truck, and the appellant Bryant asked him if he would haul some copper wire out of the hollow for them, which he refused to do.

Appellants testified that they knew nothing about the theft of the wire or where it had been hidden. They admitted that they had been on the road leading to the Cinderella Mine, but deny Crum's testimony about Bryant's conversation with him. However, appellants admit that they stopped Crum one morning as he was driving toward his mine and asked him if he would give them a job. Other evidence was introduced which tended to support their defense to the crime charged.

We have studied this case with care to discover any evidence upon which this verdict could be rested and have found nothing more than a suspicion, or an inference of the appellants' guilt. We recognize it is the province of the jury to weigh the evidence and reconcile conflicting testimony, but when the testimony does not establish the connection of the accused with the offense charged, the evidence is not sufficient as a matter of law to warrant a submission of the case to the jury. Such is the case here. Carpenter v. Commonwealth, 287 Ky. 819, 155 S.W.2d 240; Drake v. Commonwealth, 264 Ky. 261, 94 S.W.2d 684.

Of course, it may be possible that appellants are guilty of this crime. If so, it is unfortunate for society that the evidence to establish their guilt has not been found.

But it would be far worse if this Court allowed one accused of such a crime to be convicted and punished in the absence of evidence of his guilt.

We are of the opinion that the court should have sustained appellants' motion for a peremptory instruction and directed the jury to find the appellants not guilty. If upon a retrial substantially the same evidence is presented, the court will so instruct the jury.

For the reason assigned, the judgment is reversed with directions to grant the appellants a new trial.

CAMMACK, J., dissents because he believes the evidence was sufficient to take the case to the jury and to support the jury's verdict.