**Charlie HOLCOMB, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 24, 1955.

---

Harry M. Caudill, Whitesburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., George B. Akin, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

Charlie Holcomb was indicted for murder and was convicted of voluntary manslaughter for the killing of Ezekiel Holcomb on October 6, 1954. The penalty was three years' imprisonment.

In essence, one question only is presented on the appeal. Appellant's motion for a directed verdict was denied after the introduction of all proof. His motion for a new trial was directed to this point.

Ezekiel Holcomb married appellant's daughter, Evelyn. He, with his wife and three children, ages 7, 6, and 5, had been staying at appellant's home during a period of unemployment. On the day of the killing, deceased, his wife and children, and appellant left appellant's home on Line Fork about 8 o'clock in the morning and drove in the deceased's car to Cumberland. Appellant returned to his home some time during the day. The family of deceased had supper about 6 o'clock in the evening at his mother's home in Cumberland. Deceased's activities during the day were uncertain.

About 7 o'clock in the evening, deceased and his family left to return to Line Fork. Cero Holcomb, a brother, his niece and her child accompanied them to the home of another brother on Line Fork. Prior to letting his wife out at appellant's, there had been an argument between deceased and his wife. She testified that they quarreled frequently during their married life.

Deceased returned to appellant's home shortly afterwards with the children and brought them into the kitchen. His wife prepared a meal, and he ate. While he was in the kitchen, deceased was telling the children that their mother was "no good". He took hold of his oldest child, Carolyn, aged 7 years, and knocked her head against the door three times, causing her to cry. He then ordered her to shut up, go out on the porch and get washed. At his direction, Darrell, the six-year-old child, locked the door so Carolyn could not return, leaving her on the porch crying. His wife unlocked the door, permitting the child to return, and directed her to go to bed. Deceased told Carolyn that she was not going to bed until told to do so by him and that they were going back to her "Granny's". During this time, appellant was in bed in the front, adjoining room of the house. His wife, Hattie, was seated in this room.

Deceased continued to aggravate Carolyn until his wife remonstrated with him. Then he jumped to his feet, threw a pepper shaker from the table at his wife, missing her, and threw a second one, striking her on the head. When deceased started to throw a sugar bowl at his wife, she "blacked out".

At this point, Hattie Holcomb, mother of deceased's wife, went to the door between the bedroom and kitchen. Ezekiel then threw the sugar bowl at Hattie. It struck the refrigerator, broke, and pieces of it struck Hattie. She fell to the floor.

Appellant testified that he remained in his bed until he saw his wife fall. He then arose, jerked his pants on, and got his gun. As he passed by his wife, she was "gurgling", and as he reached the entrance to the kitchen, deceased had hold of Evelyn, with a fork in striking position. When appellant stepped to the door, Ezekiel released Evelyn, grabbed a drawer from a kitchen safe and drew back as if to strike appellant. It was then that appellant fired.

The single charge from the shotgun struck deceased in the right leg between the knee and hip, from which wound he died before reaching the hospital.

The testimony for the Commonwealth was to the effect that deceased had been sober and had not quarreled with his wife on the day he was killed. It was stipulated by agreement "that on July 24th, 1954, Ezekiel Holcomb was shot and wounded with a shot gun fired by the defendant, Charlie Holcomb, and it is further stipulated and agreed that Ezekiel Holcomb died immediately as the direct and proximate result of this gun shot wound. It is further stipulated and agreed that the wound was in the right leg between the knee and the hip. It is also agreed and stipulated that this occurred on Line Fork in Letcher County, Kentucky."

The only eyewitnesses to the shooting were appellant, his wife, and his daughter, all of whom testified for him substantially as stated above. There was testimony for the appellant that Ezekiel Holcomb had been drinking, was intoxicated, and that he had a quarrelsome and violent nature.

■ The evidence is conflicting only on the question of whether deceased had been drinking or had been quarreling with his wife on the day prior to the shooting. If the more unfavorable view is taken of this evidence as to appellant, it would only prove that the deceased was sober at the time of his mistreatment of his family and that he had not quarreled with his wife prior to returning to appellant's home. Neither would mitigate or excuse deceased's conduct just prior to the shooting nor would tend to disprove or contradict appellant's statement as to what happened. The statements of appellant, his wife and daughter established beyond a doubt that appellant shot and fatally wounded Ezekiel Holcomb with sufficient justification and excuse. The wound inflicted by appellant was in the leg, indicating that he may have sought only to stop deceased in his actions rather than to kill him. It was fired after deceased had abused and knocked his small daughter about, had hit his wife wtih a pepper shaker and had drawn a fork on her, had struck his mother-in-law by throwing a sugar bowl, and was threatening to strike appellant with a drawer. When it is considered that deceased so conducted himself in the home of appellant and toward the members of his family, accompanied by abusive language, appellant was justified in shooting deceased.

■ In homicide cases where the defendant admits the killing and relies upon the plea of self-defense, defense of another, or of his home, supported by uncontradicted evidence, it is the duty of the trial court to direct the acquittal of the defendant or to set aside a verdict of conviction, and it is further the duty of this Court, upon appeal, to reverse such a conviction. Minix v. Commonwealth, 266 Ky. 801, 100 S.W.2d 825; Privitt v. Commonwealth, 271 Ky. 665, 113 S.W.2d 49; Bigby v. Commonwealth, 273 Ky. 335, 116 S.W.2d 659; Farris v. Commonwealth, 295 Ky. 324, 174 S.W.2d 415; Carson v. Commonwealth, Ky., 239 S.W.2d 262.

In Taul v. Commonwealth, Ky., 249 S.W. 2d 45, it was held that if, upon a consideration of the evidence before submission of the case to the jury, it is apparent that a

verdict of guilty would be flagrantly against the evidence, i. e., not reasonably supported, the trial court should direct an acquittal. Carpenter v. Commonwealth, 287 Ky. 819, 155 S.W.2d 240; Burgin v. Commonwealth, 311 Ky. 728, 225 S.W.2d 293; Richie v. Commonwealth, Ky., 242 S.W.2d 1000.

The judgment, therefore, is reversed with directions to grant a new trial, and if the evidence is substantially the same upon the new trial, a verdict of acquittal should be directed.