# Hightower v. Commonwealth.

March 28, 1941.

William Lewis & Son, S. V. Little and C. B. Upton for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, John Hightower, was convicted of raping Virginia Turner against her will and with force, an offense denounced by Section 1154, Kentucky Statutes, and he was sentenced to serve ten years in the penitentiary. He seeks to reverse the judgment because: (1) The verdict is flagrantly against the evidence; (2) the instructions were erroneous; (3) incompetent evidence was introduced against him.

The prosecuting witness, Virginia Turner, testified she was 23 years of age and a student of a school in Tennessee. She made an unexpected visit to her mother in Corbin, Kentucky, and no one met her when she arrived by bus in that City around midnight on June 28, 1940. She was somewhat unfamiliar with the town, had only two cents in her purse and was unsuccessful in attempting to obtain free use of a telephone to get into communication with her uncle, who resided in Corbin, and she started walking to his home. Appellant is a man 32 years of age, 6 feet tall, weighs 210 pounds, has a partially paralyzed left hand and arm, and was engaged in the restaurant business in Corbin. She testified he accosted her twice on the street, offering his assistance, which she refused. His third attempt was successful, and she testified she got in his car because, "I saw if I didn't get in he was going to force me." He drove her to the home of her uncle on Sixth Street, where she alighted from the car but was unable to arouse anyone in her uncle's home. Despite the fact she testified she was afraid of defendant and got in his car voluntarily to prevent being forced into it, she returned to defendant's car and he agreed to drive her to the home of her aunt. But instead, over her protest, he drove her to the country.

At a point near a bridge some five miles from Corbin appellant stopped the car and over her protest started fondling her. Here we lift excerpts from her testimony:

"Q. Go ahead and tell what was the next thing he did? A. I cried and hollered and prayed and begged, but it didn't do any good, he just kept on.

"Q. What, if anything, did he do after he felt of you as you described? A. He made me pull my clothes off.

"Q. What clothes did he make you pull off? A. All of them.

"Q. Was that with or without your consent? A. Without.

"Q. Did you have on any of your clothes at that time (referring to the act of intercourse)? A. No, sir.

"Q. Was that with or without your consent? A. Without.

"Q. Why did you permit him to do that? A. I was afraid not to, he was so much bigger than I am, I couldn't do anything.

"Q. Did you make any resistance to him or not? A. Yes, sir.

"Q. Describe that? A. When he first started I started trying to hold his hand, and he talked real mean and said 'Quit that' and when he started to have intercourse I couldn't do nothing because he was right on top of me. I couldn't even raise my head up or nothing.

"Q. How did you get down on the seat? A. Well he told me to lie down.

"Q. Was that with or without your consent? A. Without.

"Q. After he had completed the act, what, if anything, was done with the clothes you had? A. I put them back on."

Appellant had no weapons and prosecutrix testified to no force used by him other than conclusions similar to those expressed above by her. She further testified that after the act was completed he insisted on giving her some money and she thinks it was $3, which she put in her purse. When he was not looking she stuck the money down by the side of the car seat.

Appellant then drove to Corbin; stopped at the Motor Inn, where his car was filled with gasoline. The filling station attendant, Sasser, testified he noticed the girl on the front seat in the car but she did not appear to be in distress. Next, appellant drove to White's Coffee Shop, bought a bottle of Coca Cola, which was brought to the car by Barney Massey. He testified appellant left the car and went to the side of the building for a few minutes. Massey and Noah Lay, the latter a constable who at the time was wearing an officer's cap and a badge, saw the girl in the car but noticed nothing unusual about her. This was between 2 and 3 o'clock in the morning.

After leaving the Coffee Shop, appellant drove to a

564

tourist camp where he and Virginia remained in his car until around 6 o'clock, when he brought her to Corbin and let her out on West Second Street where she requested him to take her and near where she thought her aunt lived. Virginia testified her aunt had moved and she went to her uncle's home. At the tourist camp she saw two women who worked there, but denied having any conversation with them. However, they testified they requested her to awaken Hightower, who was asleep in the car, and her reply was that she had to wait until the 6:30 A. M. bus arrived before she could go home. Virginia testified that neither she nor appellant left the car from the time she got into it at her uncle's home until Hightower let her out on Second Street. She testified that the reason she did not leave the car at the filling station or at the Coffee Shop or at the tourist camp, or call for help at any of these places, was that she was afraid. She was asked on cross-examination why appellant drove her to the places just mentioned where people could see them after he had committed the crime against her, to which she replied: "He thought I didn't care." From this record we are forced to reach the same conclusion which she testified appellant formed—that she did not care.

The rule is that any evidence, although slight or circumstantial, which tends to establish the guilt of the accused, is sufficient to take the case to the jury and to sustain a conviction unless it is so flagrantly against the evidence as to shock the conscience or lead to the conclusion that it was the result of passion or prejudice rather than the considerate deliberation of the jury. Harlan v. Com., 253 Ky. 1, 68 S. W. (2d) 443; Russell v. Com., 276 Ky. 38, 122 S. W. (2d) 1009. However, where the verdict is flagrantly against the evidence, we do not hesitate to so hold. The testimony of this girl, when taken with the surrounding facts and circumstances and considered in the light of human experience, makes it inconceivable that she did not consent to the act of appellant, hence we are constrained to hold that the verdict is flagrantly and palpably against the weight of the evidence. Some of the cases involving the crime of rape where we have reversed judgments of convictions as being flagrantly against the evidence on facts quite analogous to those in the instant case are: Webb v. Com., 223 Ky. 424, 3 S. W. (2d) 1080; Muncey v. Com.,

245 Ky. 664, 54 S. W. (2d) 46; Carter v. Com., 245 Ky. 257, 53 S. W. (2d) 521; Sells v. Com., 271 Ky. 447, 112 S. W. (2d) 692.

Appellant denies he had sexual intercourse with this girl, testifying that due to the use of liquor he was temporarily impotent and that all he did was to fondle her after she removed her clothes, and that he was entitled to an instruction on attempted rape. As we have reached the conclusion that what appellant did was not done against the consent of the prosecutrix, it is unnecessary to discuss the propriety of giving an instruction on attempted rape. Appellant further claims that he was entitled to a specific instruction on the theory that the prosecutrix consented. As the first instruction required the jury to believe beyond a reasonable doubt that the act was committed forcibly and against the will of the prosecutrix and as a reasonable doubt instruction was given, we do not deem it was necessary for the court to have specifically instructed that the appellant should have been acquitted if the prosecutrix consented to the act. His rights were fully protected without such an instruction. Webb v. Com., 223 Ky. 424, 3 S. W. (2d) 1080, and the cases therein cited.

Lastly, it is contended that the officers arrested him some 100 feet from where his car was parked, and without a search warrant they searched his car and found five one dollar bills behind the front seat. He argues this evidence tended to corroborate the prosecutrix that she put there the money he gave her. It is difficult to conceive how such testimony could have been prejudicial to him. However that may be, the testimony of the arresting officers and defendant's own testimony was to the effect that upon their request he voluntarily unlocked his car and made no objection to the officers making the search. Where a search is made without an objection on the part of the owner of the property, such search is legal and evidence obtained thereby is competent. Patton v. Com., 273 Ky. 258, 116 S. W. (2d) 311.

The judgment is reversed for proceedings consistent with this opinion.