## Hampton v. Commonwealth.

October 15, 1948.

H. H. Owens, Murray L. Brown and John M. Lyttle for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

A murder indictment was returned against appellant, Willie Hampton, Irvine Burkhart, and Clarence Bowling. The indictment charged each of the defendants as principal and as accessory, aider and abettor, and also with banding and conspiring together to commit the crime. Upon separate trial appellant was convicted and his punishment fixed at 10 years in the penitentiary. He prosecutes this appeal.

The argument for reversal is based upon the sole proposition that the evidence is not sufficient to sustain the verdict and the trial court erred in its refusal to instruct the jury to bring a verdict of acquittal. It is insisted that the verdict was based upon speculation, guess, and surmise. There were no eyewitnesses to the crime and the evidence is only circumstantial.

Briefly, the evidence shows that appellant, Burkhart, and Bowling got together sometime on the morning of the crime. Together they went to the store of a Mr. Hansford Benge about 10:00 or 10:30 that morning. After staying awhile they left and went in the direction opposite to where the body was found. About 2:30 in the afternoon they returned, at which time they stayed about 20 minutes. Burkhart had a pistol stuck in the front of his trousers, and the appellant bought some tobacco and chewing gum. They left going in the direction where the deceased's, Cornett, body was found. Mr. Benge stated that along about sundown he heard about 15 shots fired as fast as two guns could fire, apparently about the place where Cornett's body was found.

Cornett's body was lying across the road with his jaw resting on the jaw of a mule, his left arm over the mule's nose, and the right over the mule's neck. The mule also had been shot, one bullet in the root of its right ear, one in the center in the top of its head, one on the back of the neck, one on the right side, and one in the right hind leg. The mule was the one that had been ridden by appellant. It had on it a saddle to which was tied a coat, in which was a ½ gallon jar one-third full of whiskey, and the social security card of Willie Hampton. Cornett, the deceased man, had some money, peanut jar, and a pint bottle full of whiskey. There was an

empty pint bottle and a small walking stick nearby which. Cornett, being crippled, had used.

The testimony of three or four witnesses shows that on the afternoon that appellant, Bowling, and Burkhart, went down the road from Hansford Benge's store, they overtook these witnesses and when they reached the fork of the road Bowling and Burkhart turned to the right and appellant went on with these witnesses to the home of Nannie Baker, where he remained about an hour and a half to two hours. At about 4:30 Hampton left riding his mule.

Robert Clifton Baker, the son of Bill Baker, in whose home the appellant had stayed for about two hours, testified that on his way home that evening he met appellant, Willie Hampton, and that the deceased, Earl Cornett, was about 15 or 20 steps behind Hampton, and that about 10 to 20 minutes after he passed them he heard the shooting.

The circumstances above related are corroborated almost in entirety by the evidence of appellant, given on the night Cornett was killed, to the Commonwealth Attorney and the Highway Patrol. Appellant takes the position that everything actually known relative to the killing was told by him to the Commonwealth Attorney on the night that Cornett was killed. His statement to the Commonwealth Attorney, which was read into the evidence without objection on the part of the defendant, is in substance as follows: That his home was in Harlan; that he came down to Dan Hatcher's, his brother-in-law, to hunt squirrels; that he was with Burkhart and Bowling that morning and afternoon; that they had some liquor to drink and he had taken one drink; that Bowling and Burkhart had gone to Gib Hammond's where he was to go by for them after he had made a visit to the Bakers; that some time after leaving the Bakers the deceased, Earl Cornett, called to him and he stopped and waited for him; and that as they were riding along a man and a boy "was pretty near us and they said 'what the hell are you doing'? About that time the shots began firing and my mule fell on the ground. I ran on out to Gibb Hammond's and got Irvine (Burkhart) and said, 'Let's go home, somebody bushwhacked Earl.'"

Hiram Cornett testified that he met appellant and Irvine Burkhart about 8:30 at Johnson's store that night and took them to George Burkhart's, about a mile or two beyond London, a distance of about 10 miles. Johnson's store was about 3 miles from where Cornett's body was found. Appellant and Burkhart were walking and said they wanted to go to Burkhart's brother's to get some car keys. When about ½ way to London, Hiram Cornett testified that appellant told him that he and Earl Cornett were riding up the road and Earl and some man commenced cursing each other and somebody commenced shooting and his mule was killed, and he left running as fast as he could go, but he didn't know what happened to Earl but he hoped he was not hurt.

Charles Reams, Highway Patrolman, located two pistols, one at George Burkhart's in Laurel County, and another at Art Burkhart's in Clay County. Art is a brother of Earl and appellant married George Burkhart's sister. Appellant stated that the long barreled .38 was his. Irvine Buckhart stated that the other was his.

Willie D. Greer, another Highway Patrolman, who investigated the death, examined the guns and the bullets. He said that he had in his possession the bullet taken from under Cornett's tongue, which was a copper jacket bullet, .32 ball. He further testified that the bullet which killed Cornett could not have been fired from either of the weapons identified as belonging to the defendants. This is about the sum total of the pertinent facts testified to at the trial.

It will be seen immediately that the only purported eyewitness was appellant and the conclusion of the jury must have been reached from circumstantial evidence. We have held that circumstantial evidence is sufficient to uphold a verdict of the jury. In Strong v. Commonwealth, 297 Ky. 591, 180 S. W. 2d 560, 561, we said: "While the proof was circumstantial it appears to have been a pretty strong chain. This court is not authorized to, nor has it ever reversed a judgment merely because the evidence was circumstantial. The rule is that any evidence, although slight or circumstantial which goes toward the establishment of guilt, is sufficient to carry the case to the jury and to sustain a conviction unless

it appears to this court that it is so flagrantly against the evidence as to shock the conscience or lead to a belief that the verdict was the result of prejudice on the part of the jury." See also Hightower v. Commonwealth, 286 Ky. 561, 151 S. W. 2d 39; and Carr v. Commonwealth, 307 Ky. 207, 210 S. W. 2d 778.

We are confronted first with the fact that Bowling, Burkhart, and appellant were together throughout most of the day of the killing, and just prior to the shooting at about the place where Cornett's body was found, appellant and the deceased were together. According to appellant, himself, they were together at the time the shots were fired. But appellant states that he ran and did not know what happened to Cornett. But significant and outstanding is his action immediately thereafter. Instead of hurrying back to the home of the Bakers, from which he had so recently left and which was nearby, to spread the news as to what had happened, he went to Gib Hammond's where his friends of the day had gone. The alarm was not then spread, but from there he and Burkhart started out walking and were picked up by Hiram Cornett, who, at their request, drove them to the home of Burkhart's brother, a distance of about 10 miles, for the purpose of getting a car key. When about half-way on this trip, appellant told Hiram Cornett what had happened to Earl Cornett.

Obviously, the attitude and actions of appellant following the shooting are not normal reactions to such a shooting affair, where from his own statement he did not know what had happened to his friend, Cornett; his mule had been shot from under him, and he had barely escaped with his own life.

Putting all the testimony together, we are convinced that the evidence was sufficient to warrant the jury in returning its verdict, and is sufficient to uphold that verdict.

Wherefore, the judgment is affirmed.