COMMONWEALTH of Kentucky,
Appellant,

v.

Duffy WOLFORD; Blaine Wolford;
and Charlie Wolford,
Appellees.

No. 97–SC–348–DG.

Supreme Court of Kentucky.

Aug. 26, 1999.

Rehearing Denied Nov. 18, 1999.

homicide. The jury returned verdicts finding all three guilty of second-degree manslaughter and each was sentenced to five years in prison. The Court of Appeals reversed, concluding that the evidence supported only a finding of intentional homicide, thus would not support the convictions of second-degree manslaughter. Since the jury must have found the appellees not guilty of murder or first-degree manslaughter in order to convict them of the lesser offense, a retrial would be precluded by the Constitutional proscription against double jeopardy. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Commonwealth v. DeHaven,* Ky., 929 S.W.2d 187 (1996). Thus, the case was remanded with directions to dismiss the indictments. We granted discretionary review and now reverse the Court of Appeals and reinstate the judgments of conviction and the sentences imposed by the Pike Circuit Court.

A.B. Chandler, III, Attorney General, Frankfort, Rickie L. Pearson, Assistant Attorney General, Frankfort, for Appellant.

Stephen W. Owens, Pikeville, for Appellee Duffy Wolford.

Mark Wettle, Louisville, for Appellee Blaine Wolford.

W. Sidney Trivette, Pikeville, for Appellee Charlie Wolford.

COOPER, Justice.

Appellees Duffy Wolford, Blaine Wolford and Charlie Wolford were indicted by a Pike County grand jury on charges of murdering Franklin Coleman, Jr., ("Junior") and Kevin Coleman, either as principals or as accomplices. Under the instructions given at the conclusion of their joint trial, the jury could have found any one or all of the appellees guilty, as principals or accomplices, of intentional murder, wanton murder, first-degree manslaughter, second-degree manslaughter, or reckless

**I.**

■ Only Blaine Wolford objected to instructing the jury on second-degree manslaughter. Nevertheless, the Court of Appeals reversed all three convictions, reasoning that it was palpable error to instruct the jury on a lesser included offense unsupported by the evidence. RCr 10.26. As will be explained, *infra,* it was not error, much less palpable error, to instruct the jury on second-degree manslaughter under the facts of this case. Regardless, to preserve a claim that the evidence was insufficient to support an instruction on a particular theory of the case, a party must object to the giving of an instruction on that theory. RCr 9.54(2); *Shannon v. Commonwealth,* Ky., 767 S.W.2d 548, 549 (1988), *overruled on other grounds, Elliott v. Commonwealth,* Ky., 976 S.W.2d 416 (1998); *Seay v. Commonwealth,* Ky., 609 S.W.2d 128, 130 (1980). While we have held that it would be palpable error to instruct the jury on an offense not contained in the indictment, *Caretenders, Inc. v. Commonwealth,* Ky., 821 S.W.2d 83, 86

(1991), we are cited to no authority holding it to be palpable error to give an unwarranted instruction on a lesser included offense of the offense charged in the indictment. Furthermore, in *Newell v. Commonwealth*, Ky., 549 S.W.2d 89 (1977), it was held not to have been palpable error to instruct the jury on persistent felony offender despite the Commonwealth's failure to prove an essential element of that offense, *i.e.*, that the defendant was over the age of eighteen when the prior felony was committed.

To treat the giving of an unwarranted instruction on a lesser included offense as palpable error would allow a defendant to withhold his objection at trial, then claim on appeal, as here, that his conviction of the lesser offense was unsupported by the evidence. If his argument is successful, his conviction will be reversed and a retrial prohibited by double jeopardy. If his argument is unsuccessful, he still obtains the benefit of being convicted of the lesser offense. On the other hand, if the defendant objects at the trial level and his objection is sustained, the jury will be instructed on "all or nothing;" thus he will run the risk in a close case that the jury will convict of the charged offense rather than render a verdict of acquittal. Regardless, giving an unwarranted instruction on a lesser included offense more closely inures to the defendant's benefit than to his prejudice. Certainly, it does not rise to the level of palpable error.

Thus, we can dispose of the appeals brought by Duffy and Charlie Wolford solely on the basis that they failed to preserve their claims of error. However, we must still address the sufficiency of the evidence to support the instructions on second-degree manslaughter, since Blaine Wolford preserved that issue by a timely objection to the instruction. Thus, a detailed recitation of the facts proven at trial is necessary.

## II.

Franklin Coleman, Sr., and his wife, Brenda Coleman, lived in a house on Phillips Branch in Pike County. Charlie Wolford and his sons, Duffy, Blaine, and Neil Wolford, their respective wives, and other members of their extended family lived in a group of mobile homes located just up the hollow from the Coleman residence. At the time of the incident in question, Bill Hurley was also residing in Charlie Wolford's home. There had been several disputes between the Colemans and the Wolfords, some of which had been taken to court.

On the night of August 24, 1990, the Colemans' two adult sons, Junior and Kevin Coleman, along with a friend, Ricky Wolford (no kin to appellees), were visiting the Coleman residence. While sitting on the front porch, the Colemans and Ricky Wolford watched as Kentucky State Trooper Bobby Johnson stopped a pickup truck being driven by Bill Hurley. According to Trooper Johnson, he merely asked Hurley to turn down the volume on his radio. Johnson also testified that he could see seven or eight people standing on what was later determined to be Duffy Wolford's front porch.

Franklin Coleman, Sr., testified that after Trooper Johnson left the hollow, he heard Blaine Wolford shout that "those g— d— s.o.b.'s have called the law again" and that he was "tired of those people calling the law and we can't party." He then heard shots fired from the direction of the Wolford property. Shortly thereafter, Junior and Kevin Coleman, armed respectively with a baseball bat and a club, were seen leaving the Coleman property and walking up the hollow toward the Wolford compound. Franklin Coleman testified that he then heard two more gunshots, following which he heard Blaine Wolford shout, "[n]ow you g— d— s.o.b.'s can't call the law on us any more, can you?" Franklin recalled seeing Blaine Wolford standing two feet from the corner of the Colemans' fence holding a "stick." He then heard two more gunshots fired from near the front of the Colemans' driveway.

Franklin and Brenda Coleman, he being armed with an AR–15 automatic rifle and a .25 caliber automatic pistol and she with a 9–mm automatic pistol, then proceeded down their driveway to investigate. They first encountered Neil Wolford, who was first crawling, then running up the road toward the Wolford compound. They then saw Bill Hurley and Duffy Wolford, who also ran back toward the Wolford property. Franklin testified that Duffy was holding a .25 caliber automatic pistol in his hand. Brenda testified that she saw Hurley and Duffy Wolford each hand something to Charlie Wolford. The Colemans then virtually stumbled upon the bodies of their two sons, who lay face down in the road. Junior Coleman apparently was already dead, but Kevin allegedly made a dying declaration that "Blaine and Charlie shot us." According to Franklin Coleman, Charlie Wolford then appeared and fired four more shots in their direction. Franklin then raked the Wolford compound with automatic fire from his AR–15, which caused substantial property damage, but no personal injuries.

Junior Coleman died of three gunshot wounds to the face/jawbone, upper neck/chin, and frontal chest. Kevin Coleman died of a single gunshot wound to the frontal chest. Three .25 caliber bullets were retrieved from Junior's body and one .25 caliber bullet was retrieved from Kevin's body. Laboratory tests revealed that all four shots were fired from the same weapon. The medical examiner testified that the shots were all fired from the same direction and from a height above that of the victims.

By the time the police arrived at the scene, Charlie Wolford had been taken to the hospital for treatment of a fractured skull and other injuries. He claimed at trial that when he stepped outside his front door, he was struck on the head and remembered nothing of what occurred thereafter. He denied owning a .25 caliber pistol. Duffy Wolford told the police he was in bed asleep when the incident occurred. He did not testify at trial. Blaine Wolford told the police that he was home alone watching television when the shootings took place. He reiterated at trial that he was watching television when the shots were fired, but admitted that Duffy and his wife were also at his home and that Duffy went outside when they heard a scuffle. In addition to thus contradicting Duffy's alibi, Blaine also testified that Charlie Wolford did, indeed, own a .25 caliber pistol. Bill Hurley further verified that Charlie was known to carry a small gun.

Neil Wolford claimed to have been attacked and beaten that night, and his wife testified that she saw Junior and Kevin Coleman assault Neil with a "stick." She then proceeded to Charlie Wolford's home to report the attack on her husband. Bill Hurley testified that Charlie then left the home, that shots were fired, and that Charlie returned, bleeding from a blow to his head; and that Duffy Wolford then loaded a gun and left the home. Geraldine Wolford (Charlie's daughter) testified that on the morning after the shootings, she, her mother, and Duffy went looking for a "little grayish silver white-handled gun" that belonged to Charlie. When asked what happened after it was found, Geraldine testified, "Duffy was supposed to went and hid it somewhere."

No one claimed to know who killed Junior and Kevin Coleman or why. What the jury heard was that Junior and Kevin left their parents' residence in the dark of night, apparently spoiling for a fight; that they were both killed by shots fired from a .25 caliber handgun; that both Charlie and Duffy Wolford were seen in the vicinity of the victims' bodies in possession of such a weapon, and that Charlie subsequently fired shots at Franklin and Brenda Coleman; that Blaine Wolford made threatening statements shortly before the shootings and self-incriminating statements immediately thereafter; that Kevin Coleman made a dying declaration that Blaine and Charlie had fired the fatal

shots; and that Blaine, Duffy and Charlie all made statements about their activities on the night of the killings which were later contradicted either by themselves or by other members of their family.

## III.

The Court of Appeals concluded that because "there was no evidence of wanton or reckless conduct" and the victims were shot in the face, the neck and the chest, "no inference can be drawn from the evidence that the shooting occurred only through wanton conduct rather than intentional conduct." In other words, because all four shots were fired from a height above the victims and each shot struck one of the victims, the shots must have been fired with the intent to cause their deaths. KRS 507.020(1)(a). In concluding that the homicides were "unquestionably intentional," the Court of Appeals substituted its interpretation of the facts for that of the jury.

In all of the cases relied on by the Court of Appeals and/or cited in appellees' briefs, there was either an admission by the defendant or uncontradicted testimony by an eyewitness with respect to who killed the victim, how, and why. In *Baker v. Commonwealth*, Ky., 677 S.W.2d 876 (1984), *Gray v. Commonwealth*, Ky., 695 S.W.2d 860 (1985), *Randolph v. Commonwealth*, Ky., 716 S.W.2d 253 (1986), and *Ford v. Commonwealth*, Ky.App., 720 S.W.2d 735 (1986), each defendant admitted the killing, but claimed to have acted in self-defense. All were convicted of second-degree manslaughter pursuant to KRS 503.120(1). In each case, it was held that a conviction of second-degree manslaughter could not be premised upon an intentional homicide committed under a wantonly held belief in the need to act in self-defense. All of those cases were either explicitly or implicitly overruled on that very point in *Shannon v. Commonwealth*, Ky., 767 S.W.2d 548, 548–51 (1988), *overruled on other grounds, Elliott v. Commonwealth, supra.* In *Cecil v. Commonwealth*, Ky., 888

S.W.2d 669, 672 (1994), several eyewitnesses saw the defendant shoot the victim in the head with a .38 caliber pistol from a distance of about one foot. The defendant did not deny the killing, but claimed insanity. In *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518 (1994), *overruled on other grounds, Elliott, supra,* the defendant admitted killing the victim in the presence of several witnesses, but claimed he did so in self-defense. In *Crane v. Commonwealth*, Ky., 833 S.W.2d 813 (1992), *cert. denied,* 506 U.S. 1069, 113 S.Ct. 1020, 122 L.Ed.2d 167 (1993), a store clerk was shot during a robbery and died from a single gunshot to the middle portion of the back of his head. The defendant admitted firing a shot at the store clerk and was convicted of wanton murder. His claim of *entitlement* to an instruction on second-degree manslaughter was rejected, because his own testimony proved that if the fatal shot was fired from his gun, he caused the death of the store clerk while engaged in conduct which created a grave risk of death to another person under circumstances manifesting extreme indifference to human life. KRS 507.020(1)(b). For other cases of similar import, *see, e.g., Couch v. Commonwealth*, Ky., 479 S.W.2d 636 (1972); *Martin v. Commonwealth*, Ky., 406 S.W.2d 843 (1966); *Daggit v. Commonwealth*, 314 Ky. 721, 237 S.W.2d 49 (1951).

In all of those cases, the evidence was virtually undisputed not only that the defendant killed the victim, but also with respect to the defendant's state of mind when he or she did so. The only remaining issue was the legal effect to be given to the undisputed facts. However, in the case *sub judice*, none of the defendants admitted firing the fatal shots, all claimed an alibi, and the evidence of guilt was purely circumstantial.

 This is not an issue of first impression. For over one hundred years, the rule has been that when the defendant testifies to facts showing how the killing occurred and where there is no room for any possible theory except that he is guilty

of murder or he is innocent, there is no reason for the court to instruct the jury on lesser offenses; but when the evidence is entirely circumstantial and only establishes the corpus delicti and other circumstances from which the defendant's connection with the crime might be inferred, the jury should be instructed on all degrees of homicide and, if there is evidence of a struggle, on self-defense. *E.g., Grissom v. Commonwealth*, Ky., 468 S.W.2d 263, 265 (1971); *Davenport v. Commonwealth*, 285 Ky. 628, 148 S.W.2d 1054, 1060 (1941); *Sewell v. Commonwealth*, 284 Ky. 183, 144 S.W.2d 223, 224 (1940); *Bates v. Commonwealth*, 284 Ky. 1, 143 S.W.2d 730, 733 (1940); *Fletcher v. Commonwealth*, 239 Ky. 506, 39 S.W.2d 972, 977 (1931); *Frasure v. Commonwealth*, 169 Ky. 620, 185 S.W. 146, 149–50 (1916); *Rachford v. Commonwealth*, Ky., 28 S.W. 499 (1894); *Rutherford v. Commonwealth*, 76 Ky. (13 Bush) 608, 612 (1878); 1 Cooper, *Kentucky Instructions to Juries* § 1.05C (4th ed. Anderson 1993); 3 Stanley, *Instructions to Juries in Kentucky* § 760 (2nd ed. Anderson 1957); J. Roberson, *Kentucky Criminal Law and Procedure* § 1872, pp.1987–88 (2nd ed. Anderson 1927).

■ Although the prosecution in a criminal case has the burden of proving every element of the defendant's guilt beyond a reasonable doubt, KRS 500.070(1), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Commonwealth v. Collins*, Ky., 821 S.W.2d 488, 490 (1991), we have long held that mens rea, specifically intent, can be inferred from circumstances. *E.g., McClellan v. Commonwealth*, Ky., 715 S.W.2d 464, 466 (1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987); *Commonwealth v. Phillips*, Ky., 655 S.W.2d 6 (1983), *cert. denied*, 465 U.S. 1072, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984); *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280 (1980). We agree with the Court of Appeals that the circumstantial evidence introduced in this case was sufficient to create a jury issue whether each or all of the appellees intentionally killed the Coleman brothers. We disagree that the evidence of intent was conclusive. The jury was not required to believe that the circumstantial evidence offered to prove intent in this case was sufficient to support a conviction of murder. That does not mean that in order to convict of an offense requiring a less culpable mental state, the Commonwealth was required to prove alternative circumstances indicating wantonness or recklessness.

In *Smith v. Commonwealth*, Ky., 737 S.W.2d 683 (1987), we held that an instruction on a lesser included offense is authorized if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense.

> It follows that the giving of an instruction on lesser-included offenses when the evidence would permit a jury to rationally find a defendant guilty of the lesser-included offense and acquit him of the greater offense is not erroneous, even if given over the defendant's objection.

*Id.* at 688. As in *Smith*, the appellees argue here that if a jury believes beyond a reasonable doubt that a defendant committed criminal homicide, but concludes that the evidence of his intent to kill was insufficient to convict of an intentional homicide, an acquittal is the only alternative. We disagree; for under those circumstances, the jury could rationally conclude that the defendant committed an unintentional homicide.

■ The convoluted and contradictory testimony presented in this case is the perfect example of why fact-finding in a criminal case is delegated to a jury. We reiterate the long-standing rule that where, as here, a defendant claims an alibi, or the evidence is purely circumstantial and does not conclusively establish his state of mind at the time he killed the victim, it is appropriate to instruct on all degrees of homicide and leave it to the jury to sort out the facts and determine

what inferences and conclusions to draw from the evidence. Who killed the Coleman brothers? Were the killings intentional or unintentional? Did the killer(s) act with justification? This jury believed beyond a reasonable doubt that the appellees, as principals or accomplices, shot the Colemans and that they did so without justification; but did not believe the evidence was sufficient to prove that they did so with an intent to cause the Colemans' deaths. Therefore, it was not irrational for the jury to convict the appellees of an offense requiring a less culpable mental state than intent, *e.g.,* second-degree manslaughter.

## IV.

■■ Appellees assert that the trial judge incorrectly instructed the jury on the issue of complicity. The definition of complicity set forth in the instructions contained all of the elements of that offense as defined in KRS 502.020(1). Appellees argue that a "conspiracy" as envisioned by that statute necessarily requires detailed planning and a concomitant lengthy passage of time. We disagree. A conspiracy could have occurred in this case by the mere agreement among appellees that, *e.g.,* they would jointly or severally attack the Coleman brothers in retaliation for the beating administered to Neil Wolford. All that is required is that the appellees agreed to act in concert to achieve a particular objective and that at least one of them fired the fatal shots. KRS 502.020(1)(a) (1974 commentary); *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The existence of a conspiracy can be proven, as here, by circumstantial evidence. *Hampton v. Commonwealth,* 308 Ky. 270, 214 S.W.2d 272 (1948), *overruled on other grounds, Burgin v. Commonwealth,* 311 Ky. 728, 225 S.W.2d 293 (1949); *Maggard v. Commonwealth,* 287 Ky. 787, 155 S.W.2d 228 (1941).

■■ Regardless, the Court of Appeals did not address this issue and the Commonwealth requested review only of the issues discussed in Parts I and III of this opinion. Appellees did not file cross-motions for discretionary review. CR 76.21. As we stated in *Commonwealth, Transp. Cabinet, Dep't of Highways v. Taub,* Ky., 766 S.W.2d 49 (1988):

> We will not address issues raised but not decided by the Court below. It is the rule in this jurisdiction that issues raised on appeal but not decided will be treated as settled against the appellant in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review. CR 76.21(1); *Nashville, C. & St.L. Ry. Co. v. Banks,* 168 Ky. 579, 182 S.W. 660 (1916); and *Eagle Fluorspar Co. v. Larue,* 237 Ky. 263, 35 S.W.2d 303 (1931). In this case, counsel for Taub argued that the Secretary of Transportation is without power to certify a road for condemnation which is not in the six-year plan or expressly authorized by the General Assembly. This issue was touched upon by Taub in the Court of Appeals but not commented upon by the Court in its opinion. As such, the issue is deemed to have been decided adversely to Taub and his failure to file a cross-motion for discretionary review precludes further review in this Court.

*Id.* at 51–52. This rule has been consistently followed in subsequent opinions of this Court. *Perry v. Williamson,* Ky., 824 S.W.2d 869, 871 (1992); *Stevens v. Stevens,* Ky., 798 S.W.2d 136, 139 (1990); *Green River Dist. Health Dep't v. Wigginton,* Ky., 764 S.W.2d 475 (1989). Thus, even if the issue had merit, it has not been preserved for review by this Court.

For the reasons stated in this opinion, we reverse the Court of Appeals and reinstate the judgments of convictions and the sentences imposed by the Pike Circuit Court.

LAMBERT, C.J., GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. As did the Court of Appeals, I believe the homicides here were unquestionably intentional. Both victims were shot with the same weapon, and their wounds indicate the shooter, with lethal accuracy, aimed to kill. From a close proximity above the victims, a single person fired at the Colemans with deadly precision, striking Kevin near his heart and Junior in the head, neck, and chest. This was not merely wanton or reckless conduct, but instead was quite calculated and clearly intentional.

The majority agrees the evidence introduced in this case was sufficient to show the Coleman brothers were intentionally killed. Yet it also believes that because the evidence was entirely circumstantial, the jury may infer the existence of a less culpable mental state. Although it acknowledges the prosecution in a criminal case has the burden of proving every element of the defendant's guilt beyond a reasonable doubt, the majority nevertheless concludes that when evidence of an intentional crime exists, the Commonwealth is not required to prove alternative circumstances indicating wantonness or recklessness in order to convict of an offense requiring a less culpable mental state. Instead, the jury may simply *infer* the existence of wanton or reckless conduct. I believe this proposition unconstitutionally lessens the prosecution's burden of proving *every* element of a crime, including the *mens rea*, beyond a reasonable doubt.

The evidence in the instant case proved that a single gunman intentionally shot and killed the Coleman brothers. Yet because the prosecution could not prove which of the Wolford men or their friends committed this crime, it charged several of them as both principals and accomplices, with the hope that the jury would either choose one defendant to convict of intentional murder, or, in the alternative, find all three defendants to be unsavory and convict them all of something, even if not of intentional murder. Although its strategy was successful, and although cosmic justice may have been served, actual justice and the rule of law have not. The Commonwealth has quite simply failed to meet its burden of proving that any one of the defendants, much less all three of them, acted with reckless or wanton conduct. For these reasons, I would hold the defendants' convictions for second-degree manslaughter must be reversed.

Furthermore, because the jury failed to find the defendants guilty of either murder or first-degree manslaughter, its verdict amounts to an acquittal on those charges. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). I would therefore further hold that a retrial on either of those offenses is precluded by the constitutional proscription against double jeopardy. *Commonwealth v. DeHaven,* Ky., 929 S.W.2d 187 (1996).

I must also disagree with the majority's holding regarding the issue of preservation. The majority concludes the giving of an unwarranted instruction on a lesser included offense can never be considered palpable error, reviewable pursuant to RCr 10.26. I must strenuously disagree. If an instruction is unwarranted because insufficient evidence exists to support a particular theory of the case, then it follows that any conviction which results from that instruction will also be unsupported by the evidence. To convict a person of a crime which is not supported by the evidence is the epitome of manifest injustice. I can think of few circumstances that more deservedly merit review under RCr 10.26.