# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000510-MR

MARK TATUM                                                         APPELLANT

V.
ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BARRY WILLETT, JUDGE
NO. 12-CR-001734

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, AND REVERSING IN PART**

A jury found Mark Robert Tatum guilty of murder, wanton endangerment in the first degree, and retaliating against a participant in the legal process. Following the jury verdict, the court sentenced Tatum to a total of 35 years' imprisonment. On appeal, Tatum argues that the trial court erred when it: refused to instruct the jury on reckless homicide; admitted irrelevant and unduly prejudicial evidence; and prohibited mental health experts from testifying about Tatum's mental condition at the time of the offense. Tatum also asserts that he was entitled to a directed verdict of acquittal on first-degree wanton endangerment based on a separate incident and that the wanton endangerment in the first degree jury instruction denied him a unanimous

verdict. For the following reasons, we reverse the wanton endangerment conviction BUT affirm the remaining convictions.

## I. BACKGROUND.

The majority of the facts are undisputed. Mark Robert Tatum and his girlfriend, Linda Hemming, moved to 800 Gagel Avenue in June 2006. David Allen and his wife, Su[1], lived in the home next door. Tatum, who has a hoarding disorder and falls on the autism spectrum, never spoke to the Allens.

In March 2007, Mr. Allen began filing complaints with the department of Inspection, Permits, and Licensing (IPL)[2] regarding the condition and maintenance of Tatum's house and property. Mr. Allen made multiple complaints to IPL, and more than 200 pages detailing the complaints were introduced at trial.

When IPL received a complaint, an inspector would investigate. If the problem was minor, a correction notice or "violation" was issued. If the problem was serious or potentially dangerous, a citation was issued, carrying a financial penalty, that if not paid, could lead to a lien being placed on the property. Tatum received numerous citations and liens were placed on his property.

---

[1] Tatum's brief spells Mrs. Allen's name as "Sue", while the Commonwealth's brief spells Mrs. Allen's name as "Su". Mrs. Allen's full name is Su Cha Allen, so this Opinion refers to Mrs. Allen as "Su".

[2] It appears that, when Mr. Allen filed his complaints, the agency was the Inspections, Permits and Licensing Department but is now known as the Louisville Department of Codes and Regulations.

2

In 2009, after repeated complaints by Mr. Allen, Tatum put up two flags on the side of his shed facing the Allen property. The flags were pirate flags with one reading "Dead men tell no tales." Mr. Allen again complained.

On April 16, 2012, someone shot a pellet into Mr. Allen's gutter and Mr. Allen suspected Tatum. Mr. Allen called the police and an officer told him nothing could be done because there was no proof as to who shot the gutter. Mr. Allen began watching Tatum with binoculars. At the end of April, Mr. Allen said he saw Tatum shoot out an outside walkway light on the Allen house. On May 6, 2012, Mr. Allen said he saw Tatum shoot his exhaust fan, causing a dent. Mr. Allen called the police and Tatum was arrested and charged with first-degree wanton endangerment and criminal mischief.

A no-contact order was entered on May 9, 2012 which would have prevented Tatum from staying in his home. Tatum spent some time at his cousin's house but, despite the no-contact order, Tatum returned to his house on Gagel Avenue every day. On May 31, 2012, an IPL inspector again went to Tatum's house, but did not speak to Tatum. When the inspector left, Tatum went upstairs, grabbed a gun, shot the side of the Allen home multiple times, and then left to pick up his girlfriend from work. Su returned home from work around 3:00 a.m. and discovered Mr. Allen's body inside the patio door. Tatum was arrested and, after a seven-day jury trial, was convicted of murder, wanton endangerment, and retaliating against a participant in a legal proceeding. Tatum received a sentence of 35 years' imprisonment, and he appeals as a matter of right. We note that the wanton endangerment conviction was based

3

upon Tatum shooting Mr. Allen's exhaust fan on May 6, 2012, and not based upon Tatum's fatal shooting of Mr. Allen on May 31, 2012. We address additional facts as necessary below.

## II. ANALYSIS.

### A. Tatum was not entitled to have the court instruct the jury on reckless homicide.

The trial judge instructed the jury on murder, first-degree manslaughter, and second-degree manslaughter. Tatum asserts error in the trial judge's failure to further instruct the jury on reckless homicide as a lesser included offense.

A culpable mental state is required for a criminal offense unless the offense is a violation, misdemeanor, or one defined outside the Penal Code. *See* Kentucky Revised Statute (KRS) 501.050. Murder and first-degree manslaughter require a defendant to act intentionally, KRS 507.020; KRS 507.030, while second degree manslaughter requires a defendant to act wantonly. KRS 507.040. "A person is guilty of reckless homicide when, with recklessness, he causes the death of another person." KRS 507.050.

Tatum argues he was entitled to a reckless homicide instruction because the jury heard evidence of Tatum's hoarding disorder, and his experts testified extensively about the testing performed on Tatum and where he fit on the Autism Spectrum. Tatum also presented testimony regarding how a person with autism would react when faced with certain stimuli, such as the repeated IPL complaints in this case. It was up to the jury to decide if Tatum's mental condition affected his mental state at the time of the shooting.

4

"An instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky. 2001) (citing *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993); *Luttrell v. Commonwealth*, 554 S.W.2d 75, 78 (Ky. 1977)). Further, "where the evidence does not conclusively establish a *defendant's state of mind at the time he killed the victim*, it is appropriate to instruct on all degrees of homicide." *Commonwealth v. Wolford*, 4 S.W.3d 534, 539 (Ky. 1999) (emphasis added).

The evidence in this case is very distinct from *Wolford*. In *Wolford*, none of the defendants admitted to committing the murders, and even claimed alibi defenses. *Id.* at 537. Because the evidence involved could allow multiple inferences by the jury, the Court held that instruction on all lesser included offenses was warranted. *Id.* at 539-40.[3] Tatum, however, did not dispute the fact that he fired multiple shots at Mr. Allen's home. In fact, Tatum's counsel admitted that Tatum fired the shots, albeit under an alleged extreme emotional disturbance. The evidence was not in dispute. Firing over 30 shots into your neighbor's home cannot be deemed reckless and it would, thus, be unreasonable for a juror to find that this conduct was anything other than

---

[3] Justice Cooper noted in *Wolford*, "The convoluted and contradictory testimony presented in this case is the perfect example of why fact-finding in a criminal case is delegated to the jury. . . . leave it to the jury to sort out the facts and determine what inferences and conclusions to draw from the evidence." *Wolford*, 4 S.W.3d at 539-40. In the present case, the evidence was uncontroverted that Tatum shot Mr. Allen.

5

intentional or wanton. Tatum, therefore, was not entitled to an instruction on reckless homicide.

**B.      Tatum was entitled to a directed verdict on first-degree wanton endangerment.**

We reiterate that Tatum was convicted of wanton endangerment for shooting Mr. Allen's exhaust fan on May 6, 2012. Tatum argues that the trial court erred in not granting him a directed verdict for the first-degree wanton endangerment charge.

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engaged in conduct which creates a substantial danger of death or serious physical injury to another person. KRS 508.060. "Firing a weapon in the immediate vicinity of others is the prototype of first degree wanton endangerment. This would include the firing of weapons into occupied vehicles or buildings." *Swan*, 384 S.W.3d at 102.

6

The Commonwealth presented evidence that on April 16, 2012, Mr. Allen suspected Tatum of shooting a pellet into Mr. Allen's gutter. At the end of April, 2012, Mr. Allen saw Tatum shoot Mr. Allen's outside walkway light with a BB gun. On May 6, 2012, Mr. Allen saw Tatum shoot a pellet at his exhaust fan. Tatum was convicted of wanton endangerment based on the May 6, 2012 incident.

Tatum's actions of firing a BB gun or pellet gun at the outside of Mr. Allen's house do not fall within the quintessential examples of wanton endangerment. By way of example, we look to the Court's holding in *Swan v. Commonwealth*. In *Swan*, the defendants broke into a house and began firing their guns at victims in the living room. *See id.* at 103. This Court held that Mrs. Lumpkins, the alleged victim of wanton endangerment, who was hiding in a back bedroom at the time of the gun shots, was not in the immediate vicinity of the shots fired, and the defendants were entitled to a directed verdict for wanton endangerment as related to Mrs. Lumpkins. *Id.* "Like the danger of ricochets, it is also well-known that bullets can go through and endanger people beyond the walls of a structure. So if Mrs. Lumpkins was subjected to first-degree wanton endangerment, then were not the Officers, who were present just outside when some of the shots were fired, also subjected to the same crime? What about neighbors in nearby houses? Or those down the street? We must draw the line somewhere." *Id.*

The facts in the present case are less severe than the facts in *Swan*. Tatum fired a BB gun or pellet gun at an exhaust fan outside Mr. Allen's

7

house. Tatum was not using a high-powered weapon, nor was he firing into the home. No shots were fired in Mr. Allen's immediate vicinity. Although Mr. Allen saw Tatum through his binoculars, there is no evidence Tatum saw Mr. Allen or that Tatum was shooting at Mr. Allen. Therefore, even taking the Commonwealth's evidence as true, Tatum's actions do not rise to the level of culpability as contemplated by the wanton endangerment statute and Tatum was entitled to a directed verdict on this charge.

Tatum also argues that he was denied a unanimous verdict based on the wanton endangerment jury instruction. Because the Court believes Tatum was entitled to a directed verdict on wanton endangerment we do not discuss the alleged problem of unanimity.

## C. Irrelevant and Unduly Prejudicial Evidence.

"All relevant evidence is admissible except as otherwise provided," and "evidence which is not relevant is not admissible." Kentucky Rule of Evidence (KRE) 402. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. "The law of evidence tilts heavily toward admission over exclusion." *Tuttle v. Perry*, 82 S.W.3d 920, 922 (Ky. 2002). "Relevant evidence includes not only facts tending to prove an element of the offense, but also facts tending to disprove a defense." *Id.* (citing *Springer v. Commonwealth*, 998 S.W.2d 439 (Ky. 1999)). "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice." KRE 403.

8

"A trial judge's decision with respect to relevancy of evidence under KRE 401 and 403 is reviewed under an abuse of discretion standard." *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001). The outcome of the balancing test in KRE 403 is within the sound discretion of the trial court "and that decision will only be overturned if there has been an abuse of discretion, *i.e.*, if the trial judge's ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Cook v. Commonwealth*, 129 S.W.3d 351, 361-62 (Ky. 2004).

Tatum asserts that the trial court erred in admitting irrelevant and unduly prejudicial evidence. We will address each piece of evidence in turn below.

## 1. Mug Shot.

Over Tatum's objection, the Commonwealth introduced a photo taken of Tatum after his arrest. The photo depicted Tatum, from head to toe, in handcuffs, and wearing a t-shirt with two assault rifles printed on it. The photo was shown to the jurors for approximately four seconds during trial, and it was admitted into evidence. The Commonwealth's justification for entering the photo into evidence was the need to show Tatum was free of any defensive wounds on his body. The Commonwealth also expressed the need to show Tatum's demeanor after the arrest.

Mug shots are generally not admissible at trial because of their apparent implication that the defendant previously engaged in criminal conduct. *See Redd v. Commonwealth*, 591 S.W.2d 704, 707-08 (Ky. App. 1979) (citing

9

*Roberts v. Commonwealth,* 350 S.W.2d 626 (Ky. 1961)). A defendant's current arrest photo, on the other hand, implies nothing about the defendant's criminal history, therefore, the prior-bad-act concerns are not implicated. Such photos may be admitted, if: (1) the prosecution has a demonstrable need for the evidence; (2) the photo, either as taken or as edited, does not imply that the defendant had a criminal record; and (3) the photo is introduced in a manner that does not draw attention to its source or implications. *Redd,* 591 S.W.2d at 708.

Here, Tatum's mug shot was from his current arrest for the murder of Mr. Allen, thus, there was no implication that Tatum previously engaged in criminal conduct. With that being said, the Commonwealth fails the *Redd* test. The Commonwealth's proposed reasoning for the photo's introduction was the need to show Tatum did not have any defensive wounds on his body. However, Tatum did not claim self-defense. The presence or absence of defensive wounds was irrelevant. The Commonwealth also sought introduction of the photo to show Tatum's demeanor after the arrest. However, the Commonwealth presented evidence from numerous witnesses regarding Tatum's demeanor after the arrest. "When there is already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself." *Hall v. Commonwealth,* 468 S.W.3d 814, 824 (Ky. 2015).

10

To satisfy the Commonwealth's justifications, Tatum's counsel agreed to introduction of the photo if it could be cropped to just show Tatum's face. However, the trial judge admitted the photo without cropping out the prejudicial t-shirt and handcuffs. Any probative value from introducing the photo was minimal, at best. Furthermore, the photo was highly prejudicial as it showed Tatum, in handcuffs, and wearing a t-shirt with two assault rifles. Therefore, we find the court erred in permitting introduction of the photo. We further find this error harmless, as will be discussed below.

**2. Marksmanship Certificate.**

Tatum's vehicle was searched after his arrest, and the police found a website printout of an Advanced Military Rifle Marksmanship Course. The document had been printed approximately nine months before Tatum shot and killed Mr. Allen. The court admitted the document into evidence over Tatum's objection.

Tatum argues that the printout was irrelevant, and even if relevant, was unduly prejudicial. Tatum argues that there was no evidence he attended the course or that he was even the one who printed the document. Tatum's argument is further premised on the fact that he shot Mr. Allen's house using a .22 caliber handgun and a .22 caliber rifle. The Advanced Military Rifle Marksmanship Course would not allow participants to shoot a .22 caliber rifle to gain certification. More powerful rifles were required; specifically, the class required use of "MR, M16-A2/3 or A/4 and commercial equivalents." Although

not exactly clear, it appears that the Commonwealth sought to introduce this evidence to show Tatum was a skilled marksman and a gun aficionado.

Tatum asserts that the Commonwealth's failure to provide evidence that Tatum even printed the document or attended the course makes the certificate irrelevant and inadmissible. However, this Court believes the Commonwealth's failure is an issue of weight, not admissibility. Further, Tatum made no objection to the evidence not being authenticated.

Nevertheless, the Court agrees with Tatum that the marksmanship certificate is irrelevant. The pivotal factor in the Court's decision is that Tatum, through counsel, admitted that he shot Mr. Allen's house on May 31, 2012. The evidence is undisputed that Tatum sprayed Mr. Allen's house with bullets. He did not fire individual shots indicative of skilled marksmanship, and thus the marksmanship certificate should not have been admitted. Although the evidence should not have been admitted, the error was harmless as discussed below.

### 3. Black Silhouette Target.

Police also searched the room in Tatum's house from which he fired the fatal shot, and found a black silhouette target. Tatum argues that this evidence was irrelevant and highly prejudicial, and should not have been introduced.

The Commonwealth questioned Linda Hemming, Tatum's girlfriend, about the target. Ms. Hemming testified that she and Tatum had gone to the shooting range on occasion. However, the Commonwealth failed to lay a proper

12

foundation for entry of the target. Ms. Hemming's statements only show that the couple occasionally visited the shooting range. Her testimony does not support the proposition that the target belonged to Tatum. Because of Tatum's hoarding disorder, he could have found the target in a dumpster and decided to bring it home. There was also no evidence that Tatum had shot at the paper target, when the shots occurred, or what type of gun was used on the paper targets.

Similarly to our previous analysis relating to the marksmanship certificate, the Court agrees with Tatum that the target should not have been admitted. As stated above, Tatum did not fire precisely at Mr. Allen. Instead, he fired multiple shots at the side of Mr. Allen's home. Marksmanship was not at issue and it was undisputed that Tatum shot and killed Mr. Allen. As such, the target should not have been admitted into evidence.

Although the Court finds that the mug shot, marksmanship certificate, and black silhouette target should not have been introduced into evidence, the Court finds the errors harmless. "A non-constitutional evidentiary error may be deemed harmless, the United States Supreme Court has explained, if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." *Id.* at 689. The evidence presented,

13

excluding the complained of items, overwhelmingly supports the jury's conviction. In fact, Tatum never asserts that he did not fire the shots at Mr. Allen's house, thus, the Court is not persuaded that the outcome would have been different had the evidence been properly excluded.

## 4. Bag with Gun Accessories.

Police officers found a camouflage bag, containing gun sights and scopes, in the room from which Tatum shot Mr. Allen. Tatum argues that the guns he used were introduced as the proposed weapons for the shooting, thus, the other weapons Tatum owned were inadmissible. Tatum cites *Major v. Commonwealth* for the proposition that "weapons, which have no relation to the crime are inadmissible." 177 S.W.3d 700, 710 (Ky. 2005). However, he ignores the discussion in *Major* that precedes that quote. "We have upheld the admission of weapons into evidence based upon testimony that the weapon was the one used in the commission of the offense, or that it was of the same size and shape as the weapon used in the commission of the offense, or that it was found at the scene of the offense and was capable of inflicting the type of injury sustained by the victim." *Id.* (internal citations omitted).

The bag of gun accessories was found at the scene of the offense. Although this case deals with gun accessories and not "guns", as stated in *Major*, the evidence is nonetheless relevant to show preparation for the crime. Further, the Commonwealth presented evidence that the accessories were all interchangeable with the sights and scopes on the guns Tatum actually used in the crime. As stated above, the law tilts heavily toward admission over

14

exclusion. *Tuttle*, 82 S.W.3d at 922. Therefore, we find no error with the trial court's admission of this evidence.

**D.    The trial court properly excluded mental health testimony.**

Tatum's defense was that he was suffering an extreme emotional disturbance (EED) at the time of the shooting.

> Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as the defendant believed them to be.

*McClellan v. Commonwealth*, 715 S.W.2d 464, 468 (Ky. 1986).

Tatum's last allegation of error is that the trial court denied him due process of law when it prohibited mental health experts from testifying about his mental condition at the time of the offense. There is no dispute regarding Tatum's autism and hoarding disorder. Tatum presented testimony from Dr. Allen and Dr. Miller who discussed Tatum's mental illness at length, however, the trial judge prevented Tatum's doctors from testifying about his mental condition at the time of the shooting.

In considering the Commonwealth's objection to this testimony, the trial judge properly excused the jury and discussed this Court's applicable case law with counsel. In sustaining the Commonwealth's objection, the trial judge read *Lasure v. Commonwealth*, 390 S.W.3d 139 (Ky. 2013) for the proposition that Tatum could not elicit any testimony from Drs. Allen or Miller regarding

15

Tatum's state of mind at the time of the shooting.[4] We affirm the trial judge's ruling but for different reasons. *Lasure* does not stand for a blanket prohibition of this type of testimony; nevertheless, this type of expert testimony is inadmissible in this case.

The evidence supporting extreme emotional disturbance must come from some admissible source, and "an extreme emotional disturbance instruction must be supported by 'some definite, non-speculative evidence'." *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010) (citing *Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky. 2003)).

There was no evidence in the record of an extreme emotional disturbance prior to Drs. Allen and Miller testifying. Dr. Allen testified that Tatum did not discuss the day of the shooting with him. While Tatum did discuss the day of the shooting with Dr. Miller, any testimony propounded by Dr. Miller would have been based on Tatum's out-of-court statements, which were inadmissible hearsay, and which would not fall within a hearsay exception.

Although there are two possible exceptions under which this type of hearsay evidence may be admitted, neither is applicable in this case. KRE 803(4) states: "Statements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain,

---

[4] Tatum's counsel's question to Dr. Allen was: "So putting all of this together, all you have learned about Mark, all you've learned and your willingness to change your diagnosis, is it your best considered medical opinion, that based on all of the IPL issues, and everything going on in Mark's life, that he snapped?" VR 5/16/16 10:33:49. During the judge's discussion outside of the presence of the jury, Tatum's counsel requested clarification of the parameters of Dr. Allen's testimony. At that time, the judge stated that counsel could not elicit any testimony from the doctors regarding Tatum's state of mind at the time of the shooting.

16

or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis" are admissible. Tatum was not seeking any kind of medical treatment from Dr. Miller. Dr. Miller was, in fact, Tatum's paid expert hired to testify in support of an EED defense. KRE 803(4) does not apply.

KRE 703(b) permits evidence of the basis of an expert's opinion, even if otherwise inadmissible as hearsay, so long as the evidence is deemed "trustworthy, necessary to illuminate testimony, and unprivileged." Tatum's statements to Dr. Miller regarding the day of the shooting were not trustworthy. There is no evidence that Tatum made any statements to Dr. Miller other than self-serving statements to aid in his defense. Tatum did not testify and was not subject to cross-examination based on the statements allegedly made to Dr. Miller. "To permit this type of evidence allows a defendant to testify by proxy without being subjected to the crucible of cross-examination." *Talbott v. Commonwealth*, 968 S.W.2d 76, 85 (Ky. 1988). "Where the defendant does not testify and there is no other factual basis to support a defense of extreme emotional disturbance, that defense cannot be bootstrapped into the evidence by the expert opinion premised primarily on out-of-court information furnished by the defendant." *Lasure*, 390 S.W.3d at 142 (citing *Talbott*, 968 S.W.2d, at 85).

This holding is consistent with *Lasure*. In *Lasure*, the trial court prevented Lasure's expert from testifying regarding EED unless Lasure testified because the expert's testimony would include inadmissible out of court

17

statements made by Lasure regarding the alleged EED. *Id.* This Court disagreed because, by the close of the Commonwealth's case-in-chief, there was sufficient evidence of EED, specifically, Lasure's recorded interview with detectives. . . ." *Id* at 143. In sharp contrast here, the only evidence of EED was Tatum's inadmissible, self-serving hearsay statements to Dr. Miller. We cannot say the trial judge's decision to exclude this testimony was in error.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is reversed as to the wanton endangerment conviction and remanded for that conviction to be vacated. The remaining convictions are affirmed.

Minton, C.J., Hughes, Keller, VanMeter, Venters and Wright, JJ., concur. Cunningham, J., concurs in result only by separate opinion.

CUNNINGHAM, J., CONCURRING IN RESULT ONLY:

I concur in result because I do not believe that the admission of the gun course certification and silhouette was error, harmless or otherwise. They are as relevant as the approved admission of the bag of gun accessories. All equally could be considered to show someone who might be gun crazed and goes to state of mind.

18

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General